FILED

2026 JUN -3 PM 1:55

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

UNITED STATES DISTRICT COURT

for the

Middle District of Tennessee

Nashville Division

| | |
|---|---|
| Angela Gayle Meador, <br> Plaintiff, <br><br> v. <br><br> T-Mobile USA, Inc., <br> Defendant. | ) Case No. 3:26cv-755 <br> ) <br> ) <br> ) Complaint and Demand For Jury <br> ) Trial <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2712, and federal telecommunications privacy laws and regulations governing the disclosure and protection of customer telecommunications records and Customer Proprietary Network Information ("CPNI").

2. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts and occurrences as the federal claims asserted herein.

3. Venue is proper in the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b) because:

    a. Plaintiff resides in this District;

b. Plaintiff's T-Mobile subscriber account was maintained and used in this District;

c. Defendant conducts substantial and continuous business in this District, including providing wireless telecommunications services to Tennessee residents, maintaining subscriber accounts for Tennessee customers, collecting payments from Tennessee customers, and maintaining and controlling subscriber telecommunications records associated with Tennessee residents;

d. A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including the maintenance, handling, disclosure, dissemination, and resulting misuse of Plaintiff's telecommunications records and subscriber information;

e. The injuries and damages resulting from Defendant's disclosures were suffered in this District, including invasion of privacy, emotional distress, exposure of Plaintiff's communications history, interference with Plaintiff's personal relationships and family contacts, fear for Plaintiff's safety, reputational harm, and ongoing consequences arising from the dissemination of Plaintiff's telecommunications records; and

f. Defendant knew or reasonably should have known that disclosure of Plaintiff's telecommunications records would foreseeably cause injury to Plaintiff in Tennessee, where Plaintiff resided and maintained her subscriber account.

4. Personal jurisdiction over Defendant T-Mobile USA, Inc. is proper because Defendant purposefully availed itself of conducting business within the State of Tennessee and this District by providing telecommunications services to Plaintiff and other Tennessee residents, entering into contractual relationships with Tennessee

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 2 of 114 PageID #: 2

customers, maintaining subscriber accounts and records associated with Tennessee residents, collecting payments within Tennessee, and engaging in substantial business activities within this District.

5. Defendant's contacts with Tennessee are continuous and systematic, and Plaintiff's claims arise directly from Defendant's conduct relating to Plaintiff's Tennessee-based subscriber account, telecommunications records, and related disclosures.

6. Defendant maintained, controlled, processed, transmitted, and disclosed Plaintiff's telecommunications records and subscriber information while providing telecommunications services to Plaintiff as a Tennessee resident and subscriber.

7. The exercise of jurisdiction over Defendant in this Court comports with traditional notions of fair play and substantial justice because Defendant regularly conducts business in Tennessee, derives substantial revenue from Tennessee customers, and could reasonably anticipate being haled into court in this District for claims arising from the handling and disclosure of telecommunications records associated with Tennessee subscribers.

## II. PARTIES

8. Plaintiff, Angela Gayle Meador is an individual and resident of Goodlettsville, Tennessee.

9. Defendant, T-Mobile USA, Inc. is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in Bellevue, Washington. Defendant conducts substantial business in Tennessee, including providing wireless services and maintaining subscriber accounts for Tennessee customers.

## III. STATEMENT OF FACTS

10. Plaintiff Angela Gayle Meador is a resident of Tennessee. Plaintiff was not a party to the Hawaii state-court action captioned Taft v. Thomas, Case No. 2DSC-25-0000091.

2

Complaint and Jury Demand – Meador v. T-Mobile USA, Inc.

11. Plaintiff maintained a wireless telephone account and telecommunications records with Defendant T-Mobile USA, Inc.

12. During 2025, Christina Taft sought Plaintiff's telecommunications records through proceedings filed in the District Court of the Second Circuit, State of Hawaii.

13. On or about May 28, 2025, a subpoena duces tecum was issued to Defendant seeking approximately one year of Plaintiff's telecommunications records. The subpoena sought extensive telecommunications information relating to Plaintiff, including call-detail records and text-message metadata. (Ex. A.)

14. The subpoena commanded Defendant to appear before the Hawaii court on June 16, 2025, at 1:30 p.m., and to produce the requested records. (Ex. A.)

15. Along with the subpoena, Defendant received additional materials prepared by the requesting litigant, including a multi-page exhibit, screenshots of prior communications with T-Mobile representatives, an expedited production request, alleged factual assertions concerning Plaintiff, references to other proceedings, and instructions directing that records be transmitted directly to the requesting litigant by unsecured email. (Ex. B.)

16. Prior to production, the requesting litigant communicated with T-Mobile representatives concerning Plaintiff's account and the process for obtaining records. Screenshots of those communications were included in the materials transmitted to Defendant in support of the records request. The requesting litigant subsequently referenced those communications as support for her assertion that Defendant was willing to assist with subpoena compliance. (Ex. B.)

17. The records concerned a Tennessee resident who was not a party, witness, or identified participant in the underlying Hawaii litigation and whose telecommunications records bore no apparent relationship to the claims asserted in the

underlying complaint. (Ex. C.)

18. The additional materials submitted to Defendant repeatedly referenced alleged harassment, temporary restraining order proceedings, and safety concerns involving Plaintiff. Upon information and belief, several of the proceedings cited as justification for the requested disclosure had already been terminated before the subpoena was issued and before Defendant produced Plaintiff's telecommunications records. Public court records reflected that multiple Hawaii temporary restraining order proceedings referenced by the requesting litigant had been terminated in 2023 and 2024, well before the May 2025 subpoena request and June 2025 production of records. (Ex. B.)

19. The accompanying materials requested production of approximately one year of Plaintiff's incoming and outgoing call records, text-message metadata, telephone numbers, dates, times, durations, and related telecommunications information. (Exs. B, D.)

20. Plaintiff was not provided advance notice by Defendant that her telecommunications records had been requested, nor was she provided an opportunity to object before production occurred.

21. On or about June 22, 2025, Defendant produced approximately one year of Plaintiff's telecommunications records under Tracking ID 5691938. The production consisted of hundreds of pages of telecommunications records and thousands of communication events generated through Defendant's Law Enforcement Relations process. (Ex. E.)

22. The records produced by Defendant included call-detail records, text-message metadata, incoming and outgoing telephone numbers, dates and times of communications, call durations, IMSI identifiers, IMEI identifiers, routing information,

completion information, and other telecommunications usage data sufficient to reveal Plaintiff's communications patterns, associations, and relationships.

23. The records concerned a non-party to the underlying Hawaii litigation.

24. During a July 21, 2025 hearing, the Hawaii court stated on the record that the subpoena required Defendant to appear in court and provide the records, but that the records had instead been emailed directly to the requesting litigant. During the same hearing, the requesting litigant admitted that she received Plaintiff's records from T-Mobile by email. (Ex. G.)

25. During the July 21, 2025 hearing, the Hawaii court further recognized that Plaintiff, although not a party to the litigation, was the direct subject of the subpoena and possessed a privacy interest in the records at issue. (Ex. G.)

26. The requesting litigant subsequently analyzed, sorted, filtered, and reorganized Plaintiff's telecommunications records, including creating reports identifying specific individuals with whom Plaintiff communicated and quantifying communication activity involving those individuals.

27. The records were used to create analyses identifying communication frequency, call volume, and communication patterns involving Plaintiff and third parties who were not parties to the underlying litigation.

28. The requesting litigant further attached, filed, and publicly disseminated materials derived from Plaintiff's telecommunications records in proceedings outside the Hawaii litigation, including filings in the United States District Court for the Central District of California. Plaintiff was not a party or identified participant in those proceedings. As a result, Plaintiff's telecommunications information became part of court filings and was exposed beyond the individuals involved in the underlying Hawaii action. (Ex. J)

29. In communications sent to third parties, the requesting litigant expressly

Complaint and Jury Demand – Meador v. T-Mobile USA, Inc.

stated that she had received Plaintiff's phone records from T-Mobile and cited specific information derived from those records, including call counts, communication patterns, and dates of communications. (Ex. I.)

30. On July 16, 2025, the Hawaii court entered a Sua Sponte Order Setting Aside Issuance of Subpoenas Duces Tecum and set aside the subpoenas that had been issued seeking Plaintiff's records. (Ex. F.)

31. During subsequent proceedings, the Hawaii court repeatedly questioned the relevance of obtaining approximately one year of Plaintiff's telecommunications records in connection with the underlying breach-of-contract dispute and noted that the requesting litigant was unable to explain how the records were relevant to that action. (Ex. G.)

32. On July 24, 2025, the Hawaii court found that the requesting litigant had received Plaintiff's records from T-Mobile and had disseminated those records to persons and agencies unrelated to the litigation. (Ex. H.)

33. The Hawaii court further found that the requesting litigant utilized information obtained from Plaintiff's telecommunications records to contact and communicate with third parties, including law-enforcement personnel and individuals unrelated to the underlying litigation. (Ex. H.)

34. The Hawaii court ordered that Plaintiff's telecommunications records be destroyed, prohibited further dissemination of the records, prohibited use of the records in other proceedings, and directed deletion of emails through which the records had been received from T-Mobile. (Ex. H.)

35. As a result of Defendant's disclosure, Plaintiff's private

telecommunications information, communications history, associations, and communications patterns were exposed to third parties, analyzed, distributed, and disseminated beyond the purpose for which the records were allegedly sought.

36. Plaintiff has suffered damages, including invasion of privacy, emotional distress, loss of control over private telecommunications information, and continuing harm resulting from the disclosure and dissemination of her telecommunications records.

## IV. CAUSES OF ACTION

### A. COUNT I - VIOLATION OF THE STORED COMMUNICATIONS ACT
(18 .S.C. §§ 2701–2713; Civil Remedies Under § 2707)

37. Plaintiff incorporates by reference Paragraphs 1 through 36 as though fully set forth herein.

38. At all relevant times, Defendant T-Mobile USA, Inc. was a provider of electronic communication services and remote computing services within the meaning of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2713.

39. Defendant maintained, possessed, controlled, stored, processed, and transmitted Plaintiff's telecommunications records, subscriber information, communications-related records, and related electronically stored information in the ordinary course of providing telecommunications services.

40. The records maintained by Defendant concerning Plaintiff included communications-related information, call-detail records, text-message metadata, telecommunications usage information, subscriber identifiers, device identifiers, and other electronically stored records associated with Plaintiff's account.

41. Plaintiff did not authorize Defendant to disclose her telecommunications

records to Christina Taft or to any other private individual associated with the Hawaii litigation.

42. Plaintiff was not a party to the Hawaii action in which the subpoena was issued.

43. Defendant disclosed approximately one year of Plaintiff's telecommunications records to Christina Taft in response to a subpoena request and accompanying materials submitted by the requesting litigant.

44. The records disclosed included extensive telecommunications information concerning Plaintiff's communications history, calling and movement patterns, associations, and communications activity.

45. Upon information and belief, Defendant disclosed Plaintiff's records in a manner not authorized by the Stored Communications Act.

46. Upon information and belief, Defendant transmitted Plaintiff's records directly to the requesting litigant by unsecured email rather than producing the records in the manner commanded by the subpoena.

47. The Hawaii court subsequently set aside the subpoenas through which Plaintiff's records were sought.

48. The Hawaii court further found that the requesting litigant had obtained Plaintiff's records from Defendant and had disseminated those records to persons and agencies unrelated to the litigation.

49. The Hawaii court subsequently ordered destruction of Plaintiff's records, prohibited further dissemination, prohibited use of the records in other proceedings, and directed deletion of emails through which the records had been received.

50. As a direct and proximate result of Defendant's disclosure, Plaintiff's

private telecommunications information was exposed, analyzed, distributed, and disseminated to third parties.

51. Plaintiff suffered injury, including invasion of privacy, emotional distress, loss of control over private communications-related information, reputational harm, and other damages to be proven at trial.

52. Defendant's acts and omissions were intentional, reckless, willful, knowing, and/or demonstrated deliberate indifference to Plaintiff's federally protected privacy interests.

53. Pursuant to 18 U.S.C. § 2707, Plaintiff seeks all available relief, including actual damages, statutory damages, punitive damages as permitted by law, equitable relief, costs, expenses, and such other relief as the Court deems just and proper.

## B. COUNT II - VIOLATION OF THE COMMUNICATIONS ACT (47 U.S.C. §§ 206, 207, and 222)

54. Plaintiff incorporates by reference Paragraphs 1 through 53 as though fully set forth herein.

55. At all relevant times, Defendant T-Mobile USA, Inc. was a telecommunications carrier and common carrier subject to the Communications Act of 1934, as amended.

56. Pursuant to 47 U.S.C. § 222, telecommunications carriers have duties to protect the confidentiality of Customer Proprietary Network Information ("CPNI") and other proprietary telecommunications information entrusted to them by subscribers.

57. The records disclosed by Defendant concerning Plaintiff constituted

9

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 10 of 114 PageID #: 10

Customer Proprietary Network Information ("CPNI"), including telecommunications usage information, calling records, called-party records, call-detail records, text-message metadata, communication patterns, subscriber identifiers, device identifiers, and related telecommunications information.

58. Plaintiff entrusted Defendant with her private telecommunications information in connection with Defendant's provision of wireless telecommunications services.

59. Plaintiff did not authorize Defendant to disclose her CPNI or telecommunications records to Christina Taft.

60. Plaintiff was not a party to the Hawaii litigation through which the records were sought. Nor was she a witness, or mentioned one time in the underlying Hawaii complaint.

61. Defendant disclosed approximately one year of Plaintiff's CPNI and telecommunications records to a private litigant.

62. Upon information and belief, Defendant disclosed Plaintiff's CPNI without adequate safeguards, verification, review, notice, or other measures reasonably necessary to protect the confidentiality of Plaintiff's telecommunications information.

63. Upon information and belief, Defendant disclosed Plaintiff's CPNI despite receiving materials that referenced proceedings that had previously been terminated and despite circumstances indicating that Plaintiff was not a party to the underlying litigation.

64. Upon information and belief, Defendant failed to exercise reasonable care in protecting Plaintiff's confidential telecommunications information before producing the records.

65. Following disclosure, Plaintiff's CPNI and telecommunications records

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 11 of 114 PageID #: 11

were analyzed, reorganized, distributed, disseminated, and utilized outside the underlying litigation.

66. The Hawaii court subsequently set aside the subpoenas through which Plaintiff's records were sought and later found that the records had been disseminated to persons and agencies unrelated to the litigation.

67. As a direct and proximate result of Defendant's disclosure of Plaintiff's telecommunications records, Plaintiff suffered invasion of privacy, emotional distress, humiliation, embarrassment, anxiety, loss of confidentiality, loss of control over private telecommunications information, and increased harassment, monitoring, and unwanted contact resulting from the subsequent use and dissemination of Plaintiff's records. Pursuant to 47 U.S.C. §§ 206 and 207, Plaintiff seeks recovery of all damages sustained as a result of Defendant's violations of duties imposed by federal telecommunications law, together with all additional relief authorized by law.

68. Plaintiff further seeks punitive damages where permitted, equitable relief, costs, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

## C. COUNT III - INVASION OF PRIVACY

69. Plaintiff incorporates by reference Paragraphs 1 through 68 as though fully set forth herein.

70. Plaintiff possessed a reasonable expectation of privacy in her telecommunications records, communications history, call-detail records, text-message metadata, telecommunications usage information, subscriber information, and related communications data maintained by Defendant.

71. The information disclosed by Defendant concerned Plaintiff's private affairs and was not generally known to the public.

72. Defendant disclosed Plaintiff's private telecommunications information to a third party without Plaintiff's knowledge or consent.

73. The records disclosed by Defendant included approximately one year of Plaintiff's communications-related information, including incoming and outgoing telephone numbers, dates and times of communications, call durations, text-message metadata, subscriber identifiers, device identifiers, and related telecommunications usage information.

74. Defendant knew or reasonably should have known that disclosure of such information would reveal Plaintiff's communications patterns, personal associations, relationships, activities, and other private matters.

75. Plaintiff was not a party, or in any way related to the litigation through which the records were sought.

76. Following Defendant's disclosure, Plaintiff's telecommunications information was analyzed, distributed, disseminated, and utilized outside the underlying litigation.

77. Plaintiff's private telecommunications information was subsequently communicated to third parties, agencies, and individuals unrelated to the litigation and was later incorporated into proceedings in which Plaintiff was not a party.

78. The disclosure of Plaintiff's private telecommunications information would be highly offensive to a reasonable person.

79. Defendant's acts and omissions constituted an invasion of Plaintiff's privacy and an unreasonable intrusion into Plaintiff's private affairs.

80. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress, humiliation, embarrassment, anxiety, insomnia, loss of privacy and safety, and other damages to be proven at trial.

81. Plaintiff is entitled to compensatory damages, punitive damages where permitted by law, costs, interest, and such further relief as the Court deems just and proper.

### D. COUNT IV - NEGLIGENCE

82. Plaintiff incorporates by reference Paragraphs 1 through 81 as though fully set forth herein.

83. At all relevant times, Defendant owed Plaintiff a duty to exercise reasonable care in the collection, storage, safeguarding, handling, review, and disclosure of Plaintiff's telecommunications records, subscriber information, Customer Proprietary Network Information ("CPNI"), and related confidential telecommunications data.

84. Defendant knew or reasonably should have known that Plaintiff's telecommunications records contained highly sensitive and private information capable of revealing Plaintiff's communications history, personal associations, relationships, activities, and patterns of conduct.

85. Defendant knew or reasonably should have known that disclosure of approximately one year of Plaintiff's telecommunications records to a private litigant created a substantial risk of harm to Plaintiff's privacy and confidentiality interests.

86. Defendant further knew or reasonably should have known that Plaintiff was not a party to the underlying Hawaii litigation through which the records were sought.

87. Defendant knew or reasonably should have known that Plaintiff was a Tennessee resident whose records were being requested through litigation pending in Hawaii.

13

Complaint and Jury Demand – Meador v. T-Mobile USA, Inc.

88. Defendant knew or reasonably should have known that Plaintiff was not identified as a party, witness, or participant in the underlying complaint through which the records were sought.

89. Defendant breached its duty of reasonable care by disclosing Plaintiff's telecommunications records without adequate review, verification, safeguards, notice, or other reasonable measures designed to protect Plaintiff's confidential telecommunications information.

90. Defendant breached its duty of reasonable care by producing approximately one year of Plaintiff's telecommunications records despite circumstances indicating that Plaintiff was not a party to the litigation and despite the extraordinary scope of the records requested.

91. Defendant breached its duty of reasonable care by failing to provide Plaintiff notice of the request or an opportunity to object before disclosure occurred.

92. Defendant breached its duty of reasonable care by transmitting Plaintiff's records directly to the requesting litigant rather than producing the records in the manner commanded by the subpoena.

93. Defendant breached its duty of reasonable care by failing to adequately protect Plaintiff's confidential telecommunications information from foreseeable misuse, dissemination, and disclosure to third parties.

94. Upon information and belief, Defendant failed to follow reasonable policies, procedures, safeguards, or industry practices designed to protect confidential subscriber information and telecommunications records.

95. It was reasonably foreseeable that disclosure of approximately one year of

Complaint and Jury Demand – Meador v. T-Mobile USA, Inc.

Plaintiff's telecommunications records to a private litigant could result in analysis, redistribution, dissemination, filing in other proceedings, disclosure to third parties, public exposure, and loss of confidentiality, and escalated and further stalking and harassment.

96. Following Defendant's disclosure, Plaintiff's records were analyzed, redistributed, disseminated to third parties and agencies, filed in proceedings unrelated to the underlying litigation, and exposed beyond the individuals involved in the original subpoena request.

97. As a direct and proximate result of Defendant's negligence, Plaintiff suffered invasion of privacy, emotional distress, humiliation, embarrassment, loss of confidentiality, loss of control over private telecommunications information, reputational injury, and other damages to be proven at trial.

98. Plaintiff is entitled to recover compensatory damages, consequential damages, costs, interest, and such other relief as the Court deems just and proper.

### E. COUNT V - NEGLIGENCE PER SE

99. Plaintiff incorporates by reference Paragraphs 1 through 98 as though fully set forth herein.

100. At all relevant times, Defendant was subject to federal statutes, regulations, duties, and standards governing the protection, confidentiality, handling, storage, and disclosure of subscriber telecommunications records, Customer Proprietary Network Information ("CPNI"), and related telecommunications data.

101. The statutes, regulations, and duties applicable to Defendant were enacted, in part, to protect subscribers and customers from unauthorized disclosure, misuse, dissemination, and exposure of confidential telecommunications information.

Complaint and Jury Demand – Meador v. T-Mobile USA, Inc.

102. Plaintiff is a member of the class of persons those statutes, regulations, duties, and standards were intended to protect.

103. The harms suffered by Plaintiff, including loss of privacy, exposure of confidential telecommunications information, dissemination of communications data, emotional distress, and related injuries, are among the types of harms those statutes, regulations, duties, and standards were intended to prevent.

104. Defendant violated one or more duties, obligations, standards, and requirements imposed by federal telecommunications privacy laws, regulations governing CPNI, and related legal requirements applicable to telecommunications carriers.

105. Defendant further violated duties and standards governing the handling, review, disclosure, safeguarding, and protection of confidential subscriber telecommunications information.

106. Defendant's violations of those duties, obligations, standards, and requirements constitute negligence per se.

107. As a direct and proximate result of Defendant's disclosure of Plaintiff's telecommunications records, Plaintiff suffered invasion of privacy, emotional distress, humiliation, embarrassment, anxiety, loss of confidentiality, loss of control over private telecommunications information, and increased harassment, monitoring, and unwanted contact resulting from the subsequent use and dissemination of Plaintiff's records

108. Plaintiff is entitled to recover compensatory damages, consequential damages, costs, interest, and all other relief permitted by law.

## F. COUNT VI - BREACH OF CONTRACT

109. Plaintiff incorporates by reference Paragraphs 1 through 108 as though

Complaint and Jury Demand – Meador v. T-Mobile USA, Inc.

fully set forth herein.

110. Plaintiff entered into a contractual relationship with Defendant for the provision of wireless telecommunications services.

111. The Agreement between Plaintiff and Defendant included Defendant's Terms and Conditions, Privacy Notice, privacy-related policies, and other documents incorporated into the customer relationship.

112. Plaintiff fully performed her obligations under the Agreement or was otherwise excused from performance.

113. Defendant promised, represented, and agreed that customer information, subscriber information, telecommunications records, and privacy-related information would be handled in accordance with Defendant's contractual obligations, Privacy Notice, privacy practices, and applicable telecommunications privacy requirements.

114. Plaintiff entrusted Defendant with highly sensitive telecommunications information, including call-detail records, text-message metadata, subscriber information, telecommunications usage information, device identifiers, and Customer Proprietary Network Information ("CPNI").

115. Defendant breached the Agreement by disclosing approximately one year of Plaintiff's telecommunications records and related confidential telecommunications information to a private litigant without Plaintiff's authorization.

116. Defendant further breached the Agreement by failing to adequately protect Plaintiff's confidential telecommunications information from unauthorized disclosure, misuse, dissemination, and exposure.

117. Defendant's disclosure resulted in Plaintiff's telecommunications

records being analyzed, redistributed, disseminated to third parties, incorporated into unrelated proceedings, and exposed beyond the purposes for which they were allegedly sought.

118. Defendant's acts and omissions constituted material breaches of the contractual duties and privacy-related obligations owed to Plaintiff.

119. As a direct and proximate result of Defendant's breaches, Plaintiff suffered invasion of privacy, emotional distress, loss of confidentiality, loss of control over personal telecommunications information, reputational injury, and other damages to be proven at trial.

120. Plaintiff is entitled to recover compensatory damages, consequential damages, costs, interest, and all other relief permitted by law.

## G. COUNT VII - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

121. Plaintiff incorporates by reference Paragraphs 1 through 120 as though fully set forth herein.

122. The Agreement between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing.

123. Under that covenant, Defendant was required to exercise any contractual discretion honestly, fairly, reasonably, and in a manner consistent with Plaintiff's justified expectations arising from the Agreement.

124. Plaintiff reasonably expected that Defendant would exercise reasonable care and good faith in safeguarding Plaintiff's telecommunications records, Customer Proprietary Network Information ("CPNI"), subscriber information, call-detail records, text-message metadata, and other confidential telecommunications information entrusted to Defendant.

125. Plaintiff further reasonably expected that Defendant would not disclose approximately one year of highly sensitive telecommunications records to a private litigant without appropriate safeguards, review, verification, and protection of Plaintiff's privacy interests.

126. Defendant acted contrary to Plaintiff's justified expectations and the purposes of the Agreement by disclosing Plaintiff's telecommunications records under circumstances that failed to adequately protect Plaintiff's privacy and confidentiality interests.

127. Defendant further acted contrary to the covenant of good faith and fair dealing by failing to exercise reasonable judgment and good faith in evaluating, processing, reviewing, and responding to requests seeking Plaintiff's confidential telecommunications information.

128. Defendant's conduct deprived Plaintiff of the benefit of the bargain she reasonably expected when entrusting Defendant with her confidential telecommunications information.

129. As a direct and proximate result of Defendant's conduct, Plaintiff suffered invasion of privacy, emotional distress, loss of confidentiality, loss of control over personal telecommunications information, reputational injury, and other damages to be proven at trial.

130. Plaintiff is entitled to recover compensatory damages, consequential damages, costs, interest, and all other relief permitted by law.

## H. COUNT VIII - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

131. Plaintiff incorporates by reference Paragraphs 1 through 130 as though fully set forth herein.

132. Defendant owed Plaintiff a duty to exercise reasonable care in the

collection, storage, safeguarding, handling, review, and disclosure of Plaintiff's telecommunications records, Customer Proprietary Network Information ("CPNI"), subscriber information, communications records, and other confidential telecommunications data.

133. Defendant knew or reasonably should have known that disclosure of approximately one year of Plaintiff's telecommunications records would create a substantial risk of serious emotional harm, anxiety, distress, humiliation, fear, and loss of privacy.

134. Defendant knew or reasonably should have known that Plaintiff was not a party, witness, or identified participant in the underlying Hawaii litigation through which the records were sought.

135. Defendant knew or reasonably should have known that the records sought contained highly sensitive information capable of revealing Plaintiff's communications history, personal associations, relationships, activities, and patterns of conduct.

136. Defendant breached its duty of reasonable care by disclosing Plaintiff's telecommunications records and related confidential telecommunications information under circumstances that failed to adequately protect Plaintiff's privacy and confidentiality interests.

137. Defendant further breached its duty of reasonable care by failing to take reasonable steps to prevent the foreseeable misuse, dissemination, redistribution, public exposure, and disclosure of Plaintiff's telecommunications information.

138. As a direct and proximate result of Defendant's conduct, Plaintiff experienced severe emotional distress, mental anguish, anxiety, insomnia, humiliation, fear, embarrassment, loss of peace of mind, and loss of personal security.

139. Plaintiff's emotional injuries were reasonably foreseeable consequences

20

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 21 of 114 PageID #: 21

of Defendant's disclosure of highly sensitive telecommunications records and the subsequent dissemination and public exposure of those records.

140. Plaintiff's emotional injuries are serious and significant and have manifested through symptoms, treatment, counseling, medical care, and other effects to be established through evidence and testimony.

141. Plaintiff has incurred damages including emotional distress, mental anguish, loss of enjoyment of life, medical expenses, counseling expenses, and other damages to be proven at trial.

142. As a direct and proximate result of Defendant's negligence, Plaintiff is entitled to recover compensatory damages, consequential damages, costs, interest, and such other relief as the Court deems just and proper.

## 143. CLAIM FOR PUNITIVE DAMAGES

144. Plaintiff incorporates by reference Paragraphs 1 through 142 as though fully set forth herein.

145. Plaintiff alleges that Defendant's conduct constituted more than mere inadvertence or ordinary negligence.

146. Defendant possessed and controlled highly sensitive telecommunications records, Customer Proprietary Network Information ("CPNI"), call-detail records, text-message metadata, subscriber information, and other confidential telecommunications information belonging to Plaintiff.

147. Defendant knew or reasonably should have known that unauthorized disclosure of such information could expose Plaintiff to substantial privacy harms, misuse of personal information, dissemination to third parties, public disclosure,

21

Complaint and Jury Demand – Meador v. T-Mobile USA, Inc.

emotional distress, and other foreseeable injuries.

148. Despite those risks, Defendant disclosed approximately one year of Plaintiff's telecommunications records to a private litigant under circumstances that failed to adequately protect Plaintiff's privacy and confidentiality interests.

149. Defendant further disclosed records concerning a Tennessee resident who was not a party, witness, or identified participant in the underlying Hawaii litigation through which the records were sought.

150. Upon information and belief, Defendant failed to exercise adequate safeguards, review, verification, oversight, and protective measures before releasing Plaintiff's confidential telecommunications information.

151. Upon information and belief, Defendant acted with conscious disregard, reckless disregard, deliberate indifference, and/or reckless disregard for the rights, privacy, and confidentiality interests of Plaintiff.

152. Defendant's conduct resulted in Plaintiff's telecommunications records being analyzed, disseminated, publicly disclosed, incorporated into unrelated proceedings, and exposed to individuals beyond those involved in the original subpoena request.

153. Defendant's conduct was willful, reckless, malicious, fraudulent, intentional, and/or demonstrated a conscious disregard for the rights and safety of Plaintiff sufficient to support an award of punitive damages under applicable law.

154. Plaintiff therefore seeks punitive damages in an amount sufficient to punish Defendant, deter similar conduct in the future, and serve the interests of justice.

**VI. PRAYER FOR RELIEF**

22

WHEREFORE, Plaintiff Angela Gayle Meador respectfully requests that this Court enter judgment in her favor and against Defendant T-Mobile USA, Inc., and award the following relief:

A. Compensatory damages in an amount to be determined by the jury;

B. Consequential damages in an amount to be determined by the jury;

C. Actual damages pursuant to applicable federal law;

D. Statutory damages available under applicable federal law, including but not limited to damages authorized under the Stored Communications Act;

E. Damages recoverable pursuant to 47 U.S.C. §§ 206 and 207 and other applicable provisions of federal telecommunications law;

F. Damages for invasion of privacy, emotional distress, mental anguish, humiliation, embarrassment, loss of confidentiality, loss of personal security, and loss of enjoyment of life;

G. Medical expenses, counseling expenses, and all other damages proven at trial;

H. Punitive damages in an amount sufficient to punish Defendant and deter similar conduct in the future;

I. Pre-judgment interest as permitted by law;

J. Post-judgment interest as permitted by law;

K. Costs of this action;

L. Attorney's fees, litigation expenses, and costs where authorized by statute or other applicable law;

M. Declaratory and equitable relief as the Court deems appropriate;

N. Such other and further relief as the Court deems just and proper.

Plaintiff demands judgment against Defendant in an amount to be determined by the jury, together with all available statutory, compensatory, consequential, punitive, equitable, and other relief permitted by law.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Angela Gayle Meador

Plaintiff, Pro Se

123 East Cedar Street

Goodlettsville, Tennessee 37072

(615) 423-4768

Email: babs481@aol.com

Dated: 06/03/2026

# EXHIBIT LIST

Exhibit A – Subpoena Duces Tecum Directed to T-Mobile USA, Inc.

Exhibit B – Materials and Attachments Submitted with the Subpoena Request.

Exhibit C – Underlying Complaint in Hawaii Used To Obtain Plaintiff's Phone Records

Exhibit D – Expedited Production Request Submitted to T-Mobile.

Exhibit E – T-Mobile Production Documentation and Tracking Information.

Exhibit F – July 16, 2025 Sua Sponte Order Setting Aside Issuance of Subpoenas Duces Tecum.

Exhibit G – July 21, 2025 Hearing Transcript Excerpts.

Exhibit H – July 24, 2025 Order Regarding Dissemination and Destruction of Records.

Exhibit I – Evidence of Dissemination of Plaintiff's Telecommunications Records.

Exhibit J – Evidence of Filing and Use of Plaintiff's Telecommunications Records in Separate Proceedings.

25

Complaint and Jury Demand – Meador v. T-Mobile USA, Inc.

# EXHIBIT A

**SUBPOENA DUCES TECUM DIRECTED TO T-MOBILE USA, INC.**

This exhibit consists of the subpoena duces tecum issued to T-Mobile USA, Inc. seeking Plaintiff's telecommunications records and related information from a small claims court in the State of Hawaii.

☐ SUBPOENA  OR  ☑ SUBPOENA DUCES TECUM; EXHIBIT A                    Form #2DC49

**IN THE DISTRICT COURT OF THE SECOND CIRCUIT**
**WAILUKU** _____ **DIVISION**
**STATE OF HAWAI'I**

| Plaintiff(s) | |
|---|---|
| CHRISTINA TAFT | **Electronically Filed**<br>**SECOND CIRCUIT**<br>**2DSC-25-0000091**<br>**28-MAY-2025**<br>**03:40 PM**<br>**Dkt. 7 SDT** |

Reserved for Court Use

Civil No. **2DSC-25-0000091**

Defendant(s)

JAVONTI THOMAS
aka JRT MEDIA PLANNING

Filing Party(ies)/Filing Party(ies)' Attorney (Name, Attorney Number, Firm Name (if applicable), Address, Telephone and Facsimile Numbers)

Christina Taft. Pro Se
869 Mahealani St
Kihei, Hawaii 96753
212-718-1003

Name and Address of Witness:

T-Mobile USA, Inc. Agent of Service
c/o Corporation Service Company
1003 Bishop Street, Suite 1600
Pauhi Tower, Honolulu, Hawaii 96813

Date & Time: June 16, 2025 at 1:30pm

Location To Appear:

Hearing: 2145 Main Street, Courtroom 3D, Third Floor, Wailuku, Hawaii 96793
Email: taftchristina.ceo@gmail.com

☐ SUBPOENA OR ☑ SUBPOENA DUCES TECUM

**THE STATE OF HAWAI'I TO ANY OFFICER AUTHORIZED BY LAW TO SERVE SUBPOENAS IN THE STATE OF HAWAI'I**
YOU ARE COMMANDED to subpoena the individual named above.
This subpoena/subpoena duces tecum shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the above-entitled Court permits, in writing on this subpoena/subpoena duces tecum, personal delivery during those hours.

**TO THE WITNESS**
YOU ARE COMMANDED to appear at the time and place indicated to testify as a witness on behalf of the
☑ PLAINTIFF(S)          ☐ DEFENDANT(S)

who shall be responsible to provide you with a fee for attendance and mileage allowed by law.

☑ You are further ordered to bring with you the items listed in Exhibit A.

☐ You are required to designate a representative of your organization to testify for the organization on the following matters:
**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT.**

Date: MAY 2 8 2025

Clerk of the above-entitled Court          /sgd/ N. GOMES (seal)

In accordance with the **Americans with Disabilities Act**, and other applicable State and Federal laws, if you require an accommodation for your disability when working with a court program, service, or activity please contact the District Court Administration Office at PHONE NO. 244-2800, FAX 244-2849, or email adarequest@courts.hawaii.gov at least (10) working days before your preceeding, hearing, or appointment date. For Civil related matters, please call 244-2706 or visit the Service Center at 2145 Main Street, Room 141A, Wailuku, Hawai'i 96793.

SUBPOENA.X
2D-P-263 (Rev 7/28/2017)
RG-AC-508 (8/17)

I certify this is a full, true, and correct
copy of the original on file in this office.

Clerk, District Court of the above Circuit, State of Hawai'i

# EXHIBIT B

## MATERIALS AND ATTACHMENTS SUBMITTED WITH THE SUBPOENA REQUEST

This exhibit consists of materials submitted in support of the subpoena request, including attachments, screenshots, correspondence, and related documents provided to T-Mobile USA, Inc. in connection with the request for Plaintiff's telecommunications records.

# EXHIBIT A

## SUBPOENA DUCES TECUM FOR PRODUCTION OF PHONE RECORDS

**Case No.:** 2DSC-25-0000091
**Related Case:** 3DSS-25-0000044 (Restraining Order Matter)

**TO:** T-Mobile USA, Inc. Powertel Nashville
Legal & Emergency Response Department
4 Sylvan Way
Parsippany, N.J. 07054
Email: lerinbound@t-mobile.com
Phone: (973) 292-8911
Fax: (973) 292-8697

## YOU ARE COMMANDED TO PRODUCE:

Pursuant to Rule 45 of the Hawai'i Rules of Civil Procedure (HRCP) and all applicable statutes, you are directed to produce and provide copies of the following phone records, documents, and electronically stored information, pertaining to the **T-Mobile account associated with phone number (615) 423-4768** registered to **Angela Gayle Meador** in Nashville, Tennessee.

## DOCUMENTS REQUESTED

**Call Detail Records (CDRs)** - All incoming and outgoing calls, including timestamps, duration, originating and terminating numbers for phone number **(615) 423-4768** for the timespan between **May 28, 2024 to May 28, 2025** (one-year period).

**Text Message Logs** - Records of all sent and received SMS/MMS messages with phone number **(615) 423-4768**, including timestamps and recipient/sender numbers for the same time period.

## TIME PERIOD JUSTIFICATION

The requested **one-year timespan (May 28, 2024 to May 28, 2025)** is reasonable and necessary for the following legal reasons:

1. **Pattern of Harassment Documentation:** A full year of records is necessary to establish patterns of unwanted contact and harassment that may have escalated over time.

2. **Ongoing Safety Concerns:** The records are essential to document the scope and frequency of communications related to ongoing safety concerns in connection with **Taft v. Barresi, et al.** (Case No. 3DSS-25-0000044), where protective restraining orders were issued pursuant to HRS § 604-10.5. These safety concerns extend to harassment of publicist Javonti Thomas and music performer Angela Gayle Meador, whose phone

1

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

records may reveal the extent of unwanted contact and interference with their professional activities in the entertainment industry

3. **Professional Relationship Context:** The timeframe encompasses the period during which professional relationships in the film, music, and arts industries were allegedly disrupted, as detailed in the underlying litigation involving publicist services and client relationships.

## LEGAL AUTHORITY AND JUSTIFICATION

### A. Statutory Authority

This subpoena is issued pursuant to:

- Rule 45 of the Hawai'i Rules of Civil Procedure
- Hawai'i Revised Statutes (HRS) § 621-1
- HRS § 604-10.5 (restraining order provisions)
- HRS § 586-4 to 5.5 (protective order statutes)

### B. Necessity for Stalking Prevention

The phone records sought are directly relevant to:

1. **Documented Safety Concerns:** The Court in **3DSS-25-0000044** has issued protective restraining orders, demonstrating judicial recognition of legitimate safety concerns requiring documentary evidence.

2. **Pattern Evidence:** Phone records are essential to establish patterns of unwanted communication that constitute harassment, abuse, threats, and intimidation as prohibited under Hawaii's protective order statutes.

3. **Professional Interference Claims:** The records will document communications that allegedly interfered with Plaintiff's professional relationships in the film, music, and arts sectors, causing reputational and economic harm.

### C. Limited Scope and Proportionality

The request is narrowly tailored to:

- **Single phone number:** (615) 423-4768 only
- **Defined time period:** Exactly one year (May 28, 2024 to May 28, 2025)
- **Specific relevance:** Direct connection to documented safety concerns and business relationship interference

**Protection from Harassment and Stalking of Professional Relationships:**
The records are necessary to identify and prevent stalking behavior by ███████ (subject of restraining order Case No. 3DSS-25-0000044) who may be using intermediaries, including publicist Javonti Thomas (defendant in the underlying case), to engage in persistent unwanted publications and contacts. The phone records will help protect Plaintiff Taft and Angela Gayle Meador, and legitimate publicist professionals from coordinated harassment campaigns that undermine professional integrity in the entertainment and arts industries.

## T-MOBILE'S STATED COOPERATION

Based on communications with T-Mobile representatives (attached as supporting documentation), T-Mobile has indicated willingness to assist with subpoena compliance to help prevent stalking and harassment. A T-Mobile service representative specifically stated they would "assist with the number change and any other related requests" and that they are "committed to helping [the affected party] to the best of our ability."

## ACCOUNT INFORMATION

**Primary Account Holder:** Angela Gayle Meador
**Phone Number:** (615) 423-4768
**Carrier:** Powertel Nashville (T-Mobile subsidiary)
**Service Location:** Nashville, Tennessee
**Account Status:** Active (as of recent T-Mobile communications)

## METHOD OF PRODUCTION

Records may be produced electronically in native format (CSV, PDF, Excel, or TIFF) and should be:

1. **Transmitted securely** via email to Plaintiff at: taftchristina.ceo@gmail.com

2. **Uploaded** to a secure file transfer platform for Plaintiff's access

3. **Made available** for retrieval from T-Mobile's Legal & Emergency Response Department

## DEADLINE FOR COMPLIANCE

The requested records must be produced no later than **June 16, 2025**, prior to the scheduled hearing in this matter.

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

## NOTICE OF ENFORCEMENT

This subpoena is issued under the authority of the District Court of the Second Circuit, State of Hawai'i. Noncompliance without legal justification may result in court-imposed enforcement measures including contempt proceedings.

If you object to any portion of this subpoena, you must file a motion to quash or modify the subpoena within the timeframe prescribed under HRCP Rule 45(c).

---

### Legal Precedent Supporting This Request

**One-Year Timeframe Reasonableness:** *United States v. Graham*, 846 F.3d 384 (4th Cir. 2017), cert., 138 S. Ct. 455 (2017), establishes that a one-year period for telecommunications records is reasonable and proportional when seeking to establish patterns of communication relevant to ongoing legal proceedings and safety concerns.

**Stalking Prevention and Professional Relationship Protection:** *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002), cert., 539 U.S. 958 (2003), recognizes that courts have authority to compel production of communication records when necessary to prevent coordinated harassment campaigns that threaten both personal safety and professional relationships, particularly in cases involving systematic interference with legitimate business operations.

---

## CERTIFICATION

I hereby certify that this subpoena is issued in good faith and is necessary for the presentation of evidence relevant to the claims and defenses in the above-captioned action, specifically relating to:

- Prevention of stalking and harassment
- Documentation of unwanted communications
- Protection of professional relationships in the arts and entertainment industry
- Enforcement of existing protective orders

**DATED:** May 28, 2025

---

## ISSUED BY THE COURT

---

*This subpoena is issued pursuant to existing court orders and protective measures designed to prevent harassment, ensure safety, and preserve evidence relevant to ongoing civil proceedings involving professional misconduct and interference with business relationships in the creative arts sector.*

---

4

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile



more information; however, since you are not logged in, our access is limited. I appreciate your understanding.

Okay I understand. However, I need the right information on a phone subpoena. Do I provide it to the agent of service for T Mobile and (Powertel Nashville).

She's never changed her phone number in decades, maybe it was her family's tradition. However yes, the police should tell her to change her phone number. I will ask them to do that but I'm far away in another state.

Since her number is recognized by our T-Mobile system, we are able to assist her with the number change and any other related requests.

Okay thank you. Can I serve the subpoena in my local state or to her local T Mobile or T Mobile headquarters? I need this information against the man stalking her and us.

Delivered

I would be happy to assist you, but I am not fully equipped to answer your question. I recommend reaching out to our team over the phone, as they may be able to provide the information you need. Alternatively, you may be referred to the Legal and Emergency Response (LER) department for further assistance.

+

C

5

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile



She's with POWERTEL Nashville but I do not see an active company for that. It looks like it was bought by T Mobile

Could you please provide her mobile number?

+1 (615) 423-4768

Thank you for providing this information. To assist her further, could she please call us at 611 or 1-800-937-8997? We are committed to helping her to the best of our ability and will provide you with any necessary information you may need.

Is this phone number with T Mobile with Powertel Nashville?

As you are currently not logged in, our access is limited. However, once she calls in, we will have enhanced coverage and tools available to assist you better.

This is the T-Mobile Hotline, and it has successfully recognized your friend's number.

Thanks I appreciate your help. Can my process server deliver a Subpeona to T Mobile for this phone number? Do I need to state on the subpoena that she and I are being stalked?

Delivered

+

6

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

| Place: | [X] Wailuku Division | 2145 Main Street, Courtroom 3D, Third Floor, Wailuku, Hawai'i 96793 |
|---|---|---|
| | [ ] Lahaina Division | 1870 Honoapi'ilani Highway, Lahaina, Hawai'i 96761 |
| | [ ] Hana Division | 4974 Uakea Road, Hana, Hawai'i 96713 (Hana Cultural Center, corner of Uakea Road and Keanini Drive) |
| | [ ] Molokai Division | 55 Makaena Place, Kaunakakai, Hawai'i 96748 |
| | [ ] Lana'i Division | 312 8th Street, Lana'i City, Hawai'i 96763 |

| Date & time: | JUN 1 6 2025     1:30pm |
|---|---|

If you need to mail or deliver anything to the Court, use this address, even if your hearing is at another location:

**2nd Circuit Court**

**2145 Main Street, Room 106, Wailuku, Hawai'i 96793**

| Clerk's signature: | _(signature)_ /sgd/ A. KAILI (seal) | Today's date: | MAY 1 9 2025 |
|---|---|---|---|

2

2D-P-302
(rev. 8/30/2022)

7

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

# EXHIBIT C

## UNDERLYING HAWAII COMPLAINT

This exhibit consists of the complaint filed in the Hawaii proceeding referenced in connection with the request for Plaintiff's telecommunications records.

# Small Claims – General Statement of Claim and Notice (#2DC06)

<table>
<tr><td>

### In the Small Claims Division of the
### District Court of the Second Circuit
WAILUKU _____ Division
### State of Hawai`i

</td><td>

**Electronically Filed**
**SECOND CIRCUIT**
**2DSC-25-0000091**
**19-MAY-2025**
**01:20 PM**
**Dkt. 1 SCN**

</td></tr>
</table>

### Please read these instructions before you start the form

**How to use this form**

Use this form to file a small claims case if you believe someone owes you $5,000 or less.

When you file this form, you are called the **Plaintiff**. The person you want a judgment against is called the **Defendant**.

This form is 3 pages and has 2 parts:

**Case number:**

Part I: The **Statement of Claim**, including your sworn statement about your situation (called a **Declaration**).

Fill out Part I to give the Court the details about your case and to tell the Court what you would like to happen.

Part II: A **Notice of Hearing**. The Court Clerk will use this part of the form to schedule a hearing for your case. At the hearing, you will be able to present evidence and tell the Judge why you should win this case. The Defendant will have the same opportunity.

When you have finished the form and the Court has scheduled a hearing, you must deliver a copy of the full form to the Defendant. You can find more information on the **Service of Process Information Sheet**.

## Part I

### STATEMENT OF CLAIM

**1** Give the Court your contact information and as much of the Defendant's contact information as you can. If you have an attorney, give the Court your attorney's contact information.

| | | | |
|---|---|---|---|
| Your name, address, telephone number, and email: | Christina Taft<br>869 Mahealani St<br>Kihei Hawaii 96753<br>212-718-1003<br>taftchristina.ceo@gmail.com | Defendant's name, address, telephone number, and email: | Javonta Thomas<br>AKA JRT Media Planning<br>337-38...<br>...javont...@...l.com<br>...33701 |
| Your attorney's name, attorney number, firm name, address, telephone number, and email: | Pro Se | | |
| | | Attorney signature | |

On the next page, you will give the Judge more information about your case and what you would like to happen. You will then sign a Declaration, swearing that the information in this form is true.

RG-AC-508 (06/2020) RL

2D-P-302
(rev. 6/30/2022)

1

| | |
|---|---|
| **2** | Give the Court information about the money that the Defendant owes you. |

| The Defendant owes me this much money: | $ 1,200 | The Defendant has owed me this money since this date: | Month 12 | Day 11 | Year 2024 |
|---|---|---|---|---|---|

This is why the Defendant owes me money. (Attach another sheet if you need more room.)

SEE SUPPLEMENT TO COMPLAINT — Defendant's failure to perform obligations, ~~misrepresentations~~ misrepresentations regarding qualifications + services, unjust enrichment + interference w/ Plaintiff's work w/ people in the Arts cases (film, music, art)

| | |
|---|---|
| **3** | Read the information below and then sign the Declaration. |

I would like the Court to order the Defendant to pay me the amount listed above. I would also like the Court to order the Defendant to pay me interest, costs, and fees that the Court believes are just and reasonable.

## PLAINTIFF'S DECLARATION

**The information in this claim is true and correct. I understand that I may be prosecuted for perjury if I have stated anything in this form that I know is not true.**

| Your signature: | Christo Teft | Today's date: | May 16, 2025 |
|---|---|---|---|

## Part II

### NOTICE OF HEARING

| | |
|---|---|
| **4** | Fill in the Defendant's name below and then take or mail the form to the Court. Court staff will schedule a hearing and will fill out the rest of Part II then return it to you to serve. |

| To: (Defendant's name) | JAVONTI THOMAS AKA JRT MEDIA PLANNING |
|---|---|

The Plaintiff has filed this Statement of Claim. A Judge will hear arguments from both the Plaintiff and the Defendant at the place and time stated here:

| Place: | [X] Wailuku Division | 2145 Main Street, Courtroom 3D, Third Floor, Wailuku, Hawai`i 96793 |
|---|---|---|
| | [ ] Lahaina Division | 1870 Honoapi`ilani Highway, Lahaina, Hawai`i 96761 |
| | [ ] Hana Division | 4974 Uakea Road, Hana, Hawai`i 96713 (Hana Cultural Center, corner of Uakea Road and Keanini Drive) |
| | [ ] Molokai Division | 55 Makaena Place, Kaunakakai, Hawai`i 96748 |
| | [ ] Lana`i Division | 312 8th Street, Lana`i City, Hawai`i 96763 |

| Date & time: | JUN 1 6 2025 | 1:30 pm |
|---|---|---|

If you need to mail or deliver anything to the Court, use this address, even if your hearing is at another location:

**2nd Circuit Court**
**2145 Main Street, Room 106, Wailuku, Hawai`i 96793**

| Clerk's signature: | ~~signature~~ LS /sgd/ A. KAILI (seal) | Today's date: | MAY 1 9 2025 |
|---|---|---|---|

2

2D-P-302
(rev. 6/30/2022)

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 39 of 114 PageID #: 39

# IN THE DISTRICT COURT OF THE SECOND CIRCUIT, MAUI DIVISION

CHRISTINA TAFT,

Plaintiff,

v.

JAVONTI THOMAS

AKA JRT Media Planning

Defendant.

)
)
) CASE NO.: _____
)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

### I. NATURE OF THE ACTION

1. Plaintiff, Christina Taft ("Plaintiff"), a citizen of Hawaii, by this Complaint, brings forth claims against Javonti Thomas AKA JRT Media Planning ("Defendant"), arising from Defendant's failure to perform contractual obligations, fraudulent misrepresentations regarding his qualifications and services, unjust enrichment, and tortious interference with Plaintiff's business relationships, tangibly associated with Film, Music, Arts Cases and nonprofits. This action seeks legal and equitable relief pursuant to Hawaii Revised Statutes ("HRS") §§ 480-2, 490:2-615, 490:2-715, and applicable common law principles.

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 40 of 114 PageID #: 40

2. Plaintiff engaged Defendant to provide public relations services, including media outreach, press release distribution, and interview scheduling, based on Defendant's representations that he possessed the necessary industry experience and professional connections to secure meaningful media coverage. Relying on these assurances, Plaintiff entered into a Public Relations Work Contract ("Contract") and remitted payments totaling between $700 and $1,200 in exchange for said services.

3. Defendant materially breached the Contract by failing to perform the agreed-upon services. Despite receiving full or partial payment, Defendant failed to conduct media outreach, secure any press coverage, or deliver the promised public relations work. Plaintiff never received the expected press exposure, interviews, or strategic media engagement, rendering Defendant's performance non-existent and in direct violation of the contractual agreement.

4. In furtherance of his fraudulent scheme, Defendant misrepresented his professional credentials, industry connections, and ability to perform the contracted work. An outsourcing platform partially refunded Plaintiff after Defendant proceeded to scheme externally, with the only receptive journalist being a CBS Reporter in Los Angeles within the platform's guided facilitation. These material misrepresentations induced Plaintiff to enter the agreement under false pretenses, constituting fraudulent inducement and

2

deceptive trade practices, prohibited under HRS § 480-2, which expressly prohibits unfair or deceptive acts in trade and commerce. Defendant knowingly and intentionally misrepresented:

- His qualifications, expertise, and ability to secure media placements for Plaintiff;

- His access to journalists and industry professionals, falsely claiming an established media network;

- The actual work performed, including fictitious outreach efforts and engagement with media entities that never occurred.

5. Defendant's retention of funds for services never rendered constitutes unjust enrichment, a cause of action recognized under Hawaii law, which prohibits one party from unjustly benefitting at the expense of another. Defendant must be compelled to disgorge all funds wrongfully obtained from Plaintiff and compensate Plaintiff for all consequential damages resulting from his fraudulent conduct.

6. Beyond his failure to perform, Defendant actively interfered with Plaintiff's existing business relationships and professional opportunities by discouraging and obstructing Plaintiff's connections with reputable journalists, media outlets, and nonprofit organizations in the film, music, and arts sectors.

3

Defendant's interference was deliberate, unjustified, and intended to create dependency on his fraudulent services, causing irreparable harm to Plaintiff's professional standing and economic prospects.

7. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered financial losses, reputational harm, and professional setbacks, including but not limited to:

   o Monetary damages from payments rendered to Defendant for services not performed;

   o Diminished business opportunities due to Defendant's failure to execute media outreach and press coverage;

   o Loss of goodwill, credibility, and harm stemming from Defendant's fraudulent misrepresentation of Plaintiff's public relations efforts.

8. Defendant's actions constitute a material breach of contract under HRS § 490:2-615 and HRS § 490:2-715, which govern contractual nonperformance and consequential damages. Plaintiff is entitled to full restitution and damages for all financial and professional harm suffered as a result of Defendant's breach.

9. Plaintiff further asserts claims for tortious interference with prospective economic advantage under Hawaii common law, as Defendant's wrongful

4

conduct interfered with Plaintiff's ability to develop, maintain, and benefit from professional relationships necessary for her career advancement. This claim is supported by Restatement (Second) of Torts § 766B, which prohibits wrongful interference with an individual's business and professional relations.

10. Accordingly, Plaintiff respectfully seeks compensatory and punitive damages, full restitution of all funds paid to Defendant, and injunctive relief to prevent Defendant from engaging in further deceptive trade practices.

11. This Court has jurisdiction over this action pursuant to HRS §§ 604-5 and 634-35, as Plaintiff resides in Hawaii, and the underlying events giving rise to this claim occurred within this jurisdiction of Hawaii's Maui County, Second Circuit. Venue is proper under HRS § 604-7 as the contract was entered into in Hawaii, and the harm suffered by Plaintiff occurred within this jurisdiction.

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the present action pursuant to Hawaii Revised Statutes ("HRS") § 604-5, which confers jurisdiction upon the Small Claims Division of the District Court of the Second Circuit, State of Hawaii, to adjudicate civil disputes involving contractual breaches, consumer fraud, and claims for damages within the monetary limits established by law.

13. This Court has personal jurisdiction over Defendant, Javonti Thomas, pursuant to HRS § 634-35, commonly known as Hawaii's Long-Arm Statute, which extends jurisdiction over non-resident defendants who engage in business transactions within the State of Hawaii or otherwise establish minimum contacts sufficient to satisfy due process requirements under International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny. Defendant has purposefully availed himself of the privileges and benefits of conducting business in Hawaii by:

a. Entering into a contract with a Hawaii resident (Plaintiff) for the provision of professional services;

b. Receiving monetary compensation from Plaintiff, a Hawaii resident, thereby deriving financial benefit from business activities tied to the jurisdiction;

c. Engaging in conduct that had substantial effects within the State of Hawaii, including financial loss and professional harm suffered by Plaintiff within this jurisdiction;

d. Committing acts of fraudulent misrepresentation and deceptive trade practices, which gave rise to the claims asserted herein, the effects of which were intended to and did manifest within Hawaii.

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 45 of 114 PageID #: 45

14. Venue is proper in this Court pursuant to HRS § 604-7, which provides that civil actions shall be brought in the district in which the cause of action arose, where the contract was partially performed, or where the harm resulting from the wrongful conduct occurred. In this case:

a. Plaintiff's place of residence for business is in Maui County, Hawaii, thereby establishing a nexus between the forum and the claims asserted;

b. The contract was partially performed in Hawaii, as Plaintiff conducted all communications, made payments, and relied on Defendant's professional representations from within this jurisdiction;

c. The injury and economic harm suffered by Plaintiff occurred within the State of Hawaii, satisfying the principle of lex loci delicti, which supports jurisdiction in the forum where the harm was sustained.

15. The exercise of jurisdiction over Defendant comports with constitutional due process requirements under HRS § 634-35 and the Fourteenth Amendment to the United States Constitution, as Defendant's contacts with the forum are sufficient to establish both general and specific jurisdiction, satisfying the minimum contacts test articulated in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).

7

## III. PARTIES

16. Plaintiff, Christina Taft ("Plaintiff"), is a natural person domiciled in Hawaii, who engaged the professional services of Defendant, Javonti Thomas, under Defendant's express representations and contractual assurances regarding his ability to provide public relations services. Plaintiff is a consumer of public relations services and brings this action to recover damages for financial loss, harm, and business interference arising from Defendant's breach of contract, fraudulent misrepresentation, and deceptive trade practices.

17. Defendant, Javonti Thomas ("Defendant"), is an individual believed to reside in Louisiana, who at all relevant times, represented himself as a professional publicist offering media relations, press outreach, and other public relations services. Defendant entered into a business transaction with Plaintiff, a Hawaii resident, by contracting to provide public relations services, accepting financial compensation, and subsequently failing to perform the agreed-upon obligations.

18. Upon information and belief, Defendant operates under the name "JRT Media Planning," which has no business registration in either of the states represented by Defendant, or other affiliated entities, through which he solicits and contracts for public relations work under the guise of professional

8

expertise. Defendant misrepresented his qualifications, experience, and ability to secure media placements, making fraudulent inducements that form the basis of the present claims for breach of contract, fraudulent misrepresentation, unjust enrichment, and tortious interference with business relations.

19. Despite receiving full or partial compensation from Plaintiff, Defendant failed to execute the contractual obligations as agreed, made material misrepresentations, and engaged in deceptive business practices, all of which have caused direct and proximate harm to Plaintiff within the jurisdiction of Hawaii. Plaintiff's financial losses, professional setbacks, and reputational damage occurred within this jurisdiction, making venue and jurisdiction proper in the Small Claims Court of the Second Circuit, State of Hawaii, County of Maui.

## III. FACTUAL ALLEGATIONS

### A. Formation of the Contract

20. On or about August 31, 2024, Plaintiff and Defendant entered into a legally binding Public Relations Work Contract ("Contract"), wherein Defendant agreed to provide professional publicist services to Plaintiff in exchange for

9

monetary compensation. The Contract was negotiated, executed, and partially performed within the jurisdiction of Hawaii.

21. Pursuant to the express terms of the Contract, Defendant undertook the obligation to provide specific and defined public relations services to Plaintiff, including but not limited to:

- Developing, drafting, and distributing press releases and other promotional media materials to enhance Plaintiff's media presence;

- Conducting media outreach and engagement with journalists, media outlets, and industry professionals to generate coverage for Plaintiff;

- Securing and scheduling interviews with reputable media organizations on Plaintiff's behalf;

- Serving as Plaintiff's public spokesperson when necessary to enhance public engagement and brand visibility.

22. Plaintiff fully complied with all contractual obligations by remitting payments in advance, totaling between $700 and $1,200, in reliance upon Defendant's professional representations, assurances of competency, and ability to deliver the agreed-upon services. Plaintiff's reliance was reasonable and justifiable, as Defendant held himself out as an experienced publicist with industry connections and expertise.

10

## B. Defendant's Failure to Perform and Contractual Breach

23. Despite receiving full or partial payment, Defendant willfully and materially breached the Contract by failing to deliver the agreed-upon services, including but not limited to:

- Failure to secure any substantive media coverage, interviews, or press placements for Plaintiff;

- Failure to execute media outreach to journalists, editors, or public relations professionals on behalf of Plaintiff;

- Failure to act as Plaintiff's public representative, conduct promotional activities, or fulfill any obligations as agreed under the Contract.

24. Defendant's failure to perform constitutes a material breach of contract as defined under HRS § 490:2-615, which governs performance obligations in contractual agreements, and HRS § 490:2-715, which entitles Plaintiff to recover consequential and incidental damages resulting from nonperformance. Defendant's nonperformance deprived Plaintiff of the benefit of the bargain, resulting in monetary losses, reputational harm, and lost business opportunities.

11

25. Plaintiff provided multiple opportunities for Defendant to cure his nonperformance, yet Defendant failed and refused to rectify the breach. deliver the promised services, or refund the amounts paid.

## C. Defendant's Fraudulent Misrepresentations

26. Defendant knowingly and intentionally misrepresented material facts to induce Plaintiff into entering the Contract. These false representations pertained to:

- Defendant's professional qualifications and industry experience as a publicist;

- His alleged connections with journalists, media outlets, and public relations professionals;

- His capability and intent to perform the contracted services in a competent and diligent manner.

27. Defendant's misrepresentations constitute fraudulent inducement because:

- Defendant made false statements of fact with knowledge of their falsity or with reckless disregard for the truth;

- Plaintiff reasonably and justifiably relied upon these misrepresentations in deciding to contract with Defendant;

12

- Plaintiff suffered monetary and reputational harm as a direct and proximate result of Defendant's fraud.

28. Defendant's deceptive and fraudulent conduct violates Hawaii's consumer protection laws, specifically HRS § 480-2(a), which prohibits unfair and deceptive acts or practices in commerce. Under HRS § 480-13, Plaintiff is entitled to seek statutory damages, injunctive relief, and attorneys' fees against Defendant for engaging in fraudulent business practices.

## D. Defendant's Interference with Plaintiff's Business and Reputation

29. In addition to breaching the Contract and engaging in fraudulent misrepresentation, Defendant actively sought to harm Plaintiff's professional relationships by:

- Interfering with Plaintiff's existing media contacts and attempting to obstruct her engagement with other professionals who were providing legitimate publicity services;

- Damaging Plaintiff's professional credibility by falsely portraying her as reliant upon his services while simultaneously failing to deliver on his contractual promises;

- Undermining Plaintiff's standing with a nonprofit organization dedicated to film, music, and the arts, thereby disrupting Plaintiff's business affiliations.

13

30. Defendant's intentional and unjustified interference with Plaintiff's business and professional relationships constitutes tortious interference with prospective economic advantage under Hawaii common law and under Restatement (Second) of Torts § 766B, which establishes liability for wrongful interference with business expectancies.

31. Defendant's wrongful conduct caused Plaintiff actual and substantial harm, including:

- Financial loss due to lost business opportunities arising from Defendant's interference;

- Reputational damage and harm to Plaintiff's standing within the media industry;

- Lost professional credibility and diminished economic prospects caused by Defendant's obstruction of her legitimate business engagements.

32. As a direct and proximate result of Defendant's fraud, contractual breach, and interference, Plaintiff has suffered significant economic harm, reputational injury, and emotional distress, all of which entitle her to compensatory, consequential, and punitive damages, as well as any equitable relief deemed just by the Court.

## IV. CAUSES OF ACTION

14

## COUNT ONE – BREACH OF CONTRACT (HRS § 490:2-615, HRS § 490:2-715)

33. Plaintiff and Defendant entered into a valid and enforceable contract for the provision of professional public relations services, wherein Defendant expressly agreed to perform media outreach, press release distribution, and interview scheduling on behalf of Plaintiff.

34. Plaintiff fully performed her contractual obligations by remitting monetary consideration as required under the Contract, making full and timely payments totaling between $700 and $1,200, in reliance on Defendant's representations and contractual commitments.

35. Defendant failed and refused to perform his contractual obligations, despite having received full or partial compensation, thereby materially breaching the contract and depriving Plaintiff of the benefit of her bargain.

36. Defendant's material breach entitles Plaintiff to damages under Hawaii law, including but not limited to:

- Restitution of all payments made under the contract;

- Compensatory damages for direct financial losses caused by Defendant's failure to perform;

15

- Consequential damages pursuant to HRS § 490:2-715, which permits the recovery of damages arising from nonperformance, including lost opportunities and reputational harm suffered by Plaintiff.

37. Plaintiff demands judgment in her favor for all contractual damages, interest, and any further relief deemed just and proper by the Court.

## COUNT TWO – UNJUST ENRICHMENT

38. Defendant knowingly accepted and retained financial benefits from Plaintiff without performing the contracted services, thereby unjustly enriching himself at Plaintiff's expense.

39. Hawaii law prohibits unjust enrichment where one party obtains financial gain or material benefit under circumstances where it would be inequitable and unjust to permit retention of the benefit without compensation to the injured party.

40. Defendant's failure to provide the promised services, issue a refund, or take corrective action resulted in Plaintiff suffering economic harm while Defendant retained an ill-gotten financial benefit.

41. Plaintiff seeks full restitution of all amounts wrongfully retained by Defendant, along with any other equitable relief the Court deems appropriate to prevent Defendant from further benefiting from his wrongful conduct.

16

## COUNT THREE – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

42. Defendant knowingly and intentionally interfered with Plaintiff's existing and prospective business relationships, including her engagement with journalists, media professionals, and nonprofit organizations.

43. Defendant's interference was undertaken wrongfully, maliciously, and without justification, with the intent to:

- Disrupt Plaintiff's existing business relationships in the public relations and media industry;

- Sever Plaintiff's connections to other professionals who could have assisted her in achieving publicity and media exposure;

- Induce reliance on Defendant's services while simultaneously failing to deliver any substantive benefit to Plaintiff.

44. As a direct and proximate result of Defendant's wrongful interference, Plaintiff suffered:

- Economic losses from disrupted business engagements and professional opportunities;

- Harm to her professional reputation due to Defendant's actions;

- Lost access to media coverage and interviews that would have enhanced her public visibility.

45. Defendant's conduct constitutes tortious interference with prospective economic advantage as recognized under Hawaii common law and the Restatement (Second) of Torts § 766B, which holds a party liable for improperly interfering with another's business opportunities.

46. Plaintiff seeks compensatory damages for the economic and reputational harm suffered, along with punitive damages to deter similar wrongful conduct by Defendant and others in the future.

## COUNT FOUR – VIOLATION OF HAWAII UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (HRS § 480-2)

47. Defendant engaged in fraudulent misrepresentation and deceptive business practices in connection with the solicitation and performance of public relations services, including but not limited to:

- Falsely claiming professional expertise, industry connections, and media outreach capabilities that he did not actually possess;

18

- Misrepresenting his ability to secure media placements and press coverage for Plaintiff;

- Receiving monetary compensation for services that were never performed and failing to issue a refund.

48. Defendant's conduct constitutes unfair and deceptive trade practices in violation of HRS § 480-2, which prohibits fraudulent, unfair, and misleading acts or practices in commerce.

49. Pursuant to HRS § 480-13, Plaintiff is entitled to statutory remedies, including:

- Compensatory damages for financial losses suffered as a result of Defendant's deceptive practices;

- Statutory damages, restitution, and injunctive relief to prevent Defendant from engaging in further fraudulent business dealings;

- Punitive damages to punish Defendant for his willful and malicious violations of consumer protection laws.

50. Plaintiff seeks judgment in her favor, including statutory penalties, attorneys' fees, and any equitable relief necessary to prevent future harm to consumers in Hawaii.

19

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment in her favor against Defendant and requests the following relief:

1. Compensatory damages in an amount not less than **$1,200** or as proven at trial, for all financial and reputational harm suffered by Plaintiff as a direct result of Defendant's breach of contract, fraudulent misrepresentation, unjust enrichment, and tortious interference with Plaintiff's professional relationships;

2. Restitution of all funds wrongfully retained by Defendant, including but not limited to the full amount of payments made by Plaintiff for services that were never performed, along with all incidental and consequential damages arising from Defendant's wrongful conduct;

3. Pre-judgment and post-judgment interest at the statutory rate, as permitted under HRS § 478-3, from the date of Defendant's breach until full satisfaction of the judgment, to compensate Plaintiff for the loss of use of funds and the delay in receiving compensation for damages suffered;

4. A declaratory judgment that Defendant's actions constitute fraudulent misrepresentation, breach of contract, and deceptive trade practices, and that

Defendant is legally responsible for the damages incurred by Plaintiff as a result of said wrongful conduct;

5. Injunctive relief permanently prohibiting Defendant from engaging in further deceptive trade practices, fraudulent misrepresentation, and unfair business practices, including but not limited to the solicitation of public relations services under false pretenses, pursuant to HRS § 480-13, which provides for injunctive relief against deceptive trade practices;

6. Punitive damages where applicable, in an amount sufficient to punish Defendant for his willful, malicious, and fraudulent conduct and to deter similar wrongful actions in the future, pursuant to Hawaii common law and the principles articulated in Shoppe v. Gucci America, Inc., 14 P.3d 1049 (Haw. 2000), which allows for punitive damages where a defendant's conduct is intentional, reckless, and in conscious disregard of the rights of another;

7. An award of attorneys' fees and litigation costs, as permitted under HRS § 607-14, which authorizes the recovery of reasonable attorneys' fees in actions involving contractual disputes and fraud claims, in addition to any further costs of litigation reasonably incurred in prosecuting this action;

8. Any and all other relief deemed just, equitable, and proper by this Court, including such other legal and equitable remedies necessary to fully

compensate Plaintiff and prevent Defendant from engaging in future fraudulent conduct, even if applicable to film, music, arts and nonprofits' initiatives. Further, to protect engagements of citizens having local living places.

## VII. DECLARATION

I, Christina Taft, the Plaintiff in this action, declare under penalty of perjury under the laws of the State of Hawaii that the foregoing statements, allegations, and factual assertions contained in this Complaint are true and correct to the best of my knowledge, information, and belief.

I further declare that this Complaint is submitted with good cause and not for any improper purpose, and that all facts stated herein are based upon personal knowledge, documentary evidence, and reasonable belief supported by the circumstances surrounding this action.

Executed on this 10th day of March, 2025 for Maui County, Hawaii.

Christina Taft

# EXHIBIT D

**EXPEDITED PRODUCTION REQUEST SUBMITTED TO T-MOBILE USA, INC.**
This exhibit consists of the expedited production request submitted to T-Mobile USA, Inc. concerning Plaintiff's telecommunications records. Requesting party submitted to T-Mobile on Mayb 30, 2025 but not filed with the court until June 27, 2025

May 30th, 2025

Electronically Filed
SECOND CIRCUIT
2DSC-25-0000091
27-JUN-2025
09:19 AM
Dkt. 17 DOC

*Via facsimile (973) 292-8697*

Custodian of Records
T-Mobile USA, Inc. Powertel Nashville
Legal & Emergency Response Department
Subpoena Compliance
4 Sylvan Way
Parsippany, NJ 07054

Re:   Records Request/Subpoena *duces tecum*
      District Court (Hawaii-Second Circuit)
      2145 Main St. Courtroom 3D
      Wailuku, Hawaii 96793
      Case No. 2DSC-25-0000091

Dear Legal & Emergency Response Department:

  This court represents me in the above-entitled action. Attached herewith please find the subpoena *duces tecum* ("subpoena") issued by the District Court, Hawaii-Second Court, requesting Phone Records Information contained therein and in Attachment to said subpoena.

  I have been informed by the Subpoena Compliance Department, T-Mobile USA, Inc. ("T-Mobile"), that service of subpoenas, pursuant to the internal policies and procedures of T-Mobile, that delivery/transmission of a subpoena may be tendered via facsimile. It is also my understanding that payment for the production of any records is requested by T-Mobile after the provision of any documents. If any of the instructions I have recited may be inaccurate or imprecise, kindly inform me and I will remediate these issues forthwith.

  The attached subpoena is in compliance with the Rule 45 of the Federal Rules of Civil Procedure ("FRCP"). To wit, this subpoena is issued from the District Court, Hawaii-Second Circuit, which is the Court where this action is pending. Rule 45(a)(2). Additionally, the subpoena is to be reissued with a pending date and approved by the district circuit court judge duly authorized to practice in the issuing court. Rule 45(a)(3).

  If there is any option whereby T-Mobile Subpoena Compliance can expedite this request, I respectfully request that this be carried out and affirmatively consent to payment of any expedited processing fees assessed by T-Mobile in accordance with said request. If no options exist for expedited requests for the matter herein, please process this request accordingly.

  Once the requested documents, electronically stored information, or tangible things ("records") are assembled, you may, in lieu of appearance at the prescribed place set forth for production, transmit them to me via email at taftchristina.ceo@gmail.com, via the hearing on June 16th. Should you have any questions or concerns, please do not hesitate to contact me at (212) 718-1003. Thank you in advance for your courtesy and cooperation.

RECEIVED   JUN 2 6 2025

Pursuant to Rule 45 of the Hawai'i Rules of Civil Procedure (HRCP) and all applicable statutes, you are directed to produce and provide copies of the following phone records, documents, and electronically stored information, pertaining to the T-Mobile account associated with phone number (615) 423-4768 registered to Angela Gayle Meador in Nashville, Tennessee.

**T-MOBILE'S STATED COOPERATION**

Based on communications with T-Mobile representatives (attached as supporting documentation), T-Mobile has indicated willingness to assist with subpoena compliance to help prevent stalking and harassment. A T-Mobile service representative specifically stated they would "assist with the number change and any other related requests" and that they are "committed to helping [the affected party] to the best of our ability."

1. Pattern of Harassment Documentation: A full year of records is necessary to establish patterns of unwanted contact and harassment that may have escalated over time.
2. Ongoing Safety Concerns: The records are essential to document the scope and frequency of communications related to ongoing safety concerns in connection with Taft v. Barresi, et al. (Case No. 3DSS-25-0000044), where protective restraining orders were issued pursuant to HRS § 604-10.5. These safety concerns extend to harassment of publicist Javonti Thomas and music performer Angela Gayle Meador, whose phone records may reveal the extent of unwanted contact and interference with their professional activities to Plaintiff (Case 2DSC-25-0000091).

B. Necessity for Stalking Prevention
The phone records sought are directly relevant to:
1. Documented Safety Concerns: The Court in 3DSS-25-0000044 has issued protective restraining orders, demonstrating judicial recognition of legitimate safety concerns requiring documentary evidence.
2. Pattern Evidence: Phone records are essential to establish patterns of unwanted communication that constitute harassment, abuse, threats, and intimidation as prohibited under Hawaii's protective order statutes.
3. Professional Interference Claims: The records will document communications of stalking of Plaintiff's friendships and that allegedly interfered with Plaintiff's professional relationships in the film, music, and arts sectors, causing safety, reputational and economic harm.
C. Limited Scope and Proportionality
The request is narrowly tailored to:
• Single phone number: (615) 423-4768 only
• Defined time period: Exactly one year (May 28, 2024 to May 28, 2025)
• Specific relevance: Direct connection to documented safety concerns and business relationship interference

Protection from Harassment and Stalking of Professional Relationships:
These records are necessary to identify and prevent stalking behavior, needing swift attention.

Very truly yours,

/s/ Christina Taft

☐ SUBPOENA  OR  ☑ SUBPOENA DUCES TECUM; EXHIBIT A

Form #2DC49

IN THE DISTRICT COURT OF THE SECOND CIRCUIT
_____ **WAILUKU** _____ DIVISION
STATE OF HAWAI'I

| | |
|---|---|
| Plaintiff(s)<br><br>CHRISTINA TAFT | **Electronically Filed<br>SECOND CIRCUIT<br>2DSC-25-0000091<br>28-MAY-2025<br>03:40 PM<br>Dkt. 7 SDT**<br><br>Reserved for Court Use |

Civil No. **2DSC-25-0000091**

| | |
|---|---|
| Defendant(s)<br><br>JAVONTI THOMAS<br>aka JRT MEDIA PLANNING | Filing Party(ies)/Filing Party(ies)' Attorney (Name, Attorney Number, Firm Name (if applicable), Address, Telephone and Facsimile Numbers)<br><br>Christina Taft. Pro Se<br>869 Mahealani St<br>Kihei, Hawaii 96753<br>212-718-1003 |

| | |
|---|---|
| Name and Address of Witness:<br><br>T-Mobile USA, Inc. Agent of Service<br>c/o Corporation Service Company<br>1003 Bishop Street, Suite 1600<br>Pauhi Tower, Honolulu, Hawaii 96813 | Date & Time:    June 16, 2025 at 1:30pm |
| | Location To Appear:<br><br>Hearing: 2145 Main Street, Courtroom 3D, Third Floor, Wailuku, Hawaii 96793<br>Email: taftchristina.ceo@gmail.com |

☐ SUBPOENA OR ☑ SUBPOENA DUCES TECUM
THE STATE OF HAWAI'I TO ANY OFFICER AUTHORIZED BY LAW TO SERVE SUBPOENAS IN THE STATE OF HAWAI'I
YOU ARE COMMANDED to subpoena the individual named above.
This subpoena/subpoena duces tecum shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the above-entitled Court permits, in writing on this subpoena/subpoena duces tecum, personal delivery during those hours.

TO THE WITNESS
YOU ARE COMMANDED to appear at the time and place indicated to testify as a witness on behalf of the
    ☑ PLAINTIFF(S)        ☐ DEFENDANT(S)

who shall be responsible to provide you with a fee for attendance and mileage allowed by law.

☑ You are further ordered to bring with you the items listed in Exhibit A.

☐ You are required to designate a representative of your organization to testify for the organization on the following matters:
**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT.**

| | | |
|---|---|---|
| MAY 2 8 2025<br><br>Date: | Clerk of the above-entitled Court | /sgd/ N. GOMES (seal) |

In accordance with the Americans with Disabilities Act, and other applicable State and Federal laws, if you require an accommodation for your disability when working with a court program, service, or activity please contact the District Court Administration Office at PHONE NO. 244-2800, FAX 244-2849, or email adarequest@courts.hawaii.gov at least (10) working days before your preceeding, hearing, or appointment date. For Civil related matters, please call 244-2706 or visit the Service Center at 2145 Main Street, Room 141A, Wailuku, Hawai'i 96793.

SUBPOENA.X
2D-P-263 (Rev 7/28/2017)
☐ RG-AC-508 (8/17)

| |
|---|
| I certify this is a full, true, and correct copy of the original on file in this office.<br><br>_____<br>Clerk, District Court of the above Circuit, State of Hawai'i |

records may reveal the extent of unwanted contact and interference with their professional activities in the entertainment industry

3. **Professional Relationship Context:** The timeframe encompasses the period during which professional relationships in the film, music, and arts industries were allegedly disrupted, as detailed in the underlying litigation involving publicist services and client relationships.

## LEGAL AUTHORITY AND JUSTIFICATION

### A. Statutory Authority

This subpoena is issued pursuant to:

- Rule 45 of the Hawai'i Rules of Civil Procedure
- Hawai'i Revised Statutes (HRS) § 621-1
- HRS § 604-10.5 (restraining order provisions)
- HRS § 586-4 to 5.5 (protective order statutes)

### B. Necessity for Stalking Prevention

The phone records sought are directly relevant to:

1. **Documented Safety Concerns:** The Court in **3DSS-25-0000044** has issued protective restraining orders, demonstrating judicial recognition of legitimate safety concerns requiring documentary evidence.

2. **Pattern Evidence:** Phone records are essential to establish patterns of unwanted communication that constitute harassment, abuse, threats, and intimidation as prohibited under Hawaii's protective order statutes.

3. **Professional Interference Claims:** The records will document communications that allegedly interfered with Plaintiff's professional relationships in the film, music, and arts sectors, causing reputational and economic harm.

### C. Limited Scope and Proportionality

The request is narrowly tailored to:

- **Single phone number:** (615) 423-4768 only
- **Defined time period:** Exactly one year (May 28, 2024 to May 28, 2025)
- **Specific relevance:** Direct connection to documented safety concerns and business relationship interference

---

2

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

## EXHIBIT A

### SUBPOENA DUCES TECUM FOR PRODUCTION OF PHONE RECORDS

Case No.: 2DSC-25-0000091
Related Case: 3DSS-25-0000044 (Restraining Order Matter)

TO: T-Mobile USA, Inc. Powertel Nashville
Legal & Emergency Response Department
4 Sylvan Way
Parsippany, N.J. 07054
Email: lerinbound@t-mobile.com
Phone: (973) 292-8911
Fax: (973) 292-8697

### YOU ARE COMMANDED TO PRODUCE:

Pursuant to Rule 45 of the Hawai'i Rules of Civil Procedure (HRCP) and all applicable statutes, you are directed to produce and provide copies of the following phone records, documents, and electronically stored information, pertaining to the **T-Mobile account associated with phone number (615) 423-4768** registered to **Angela Gayle Meador** in Nashville, Tennessee.

### DOCUMENTS REQUESTED

**Call Detail Records (CDRs)** - All incoming and outgoing calls, including timestamps, duration, originating and terminating numbers for phone number **(615) 423-4768** for the timespan between **May 28, 2024 to May 28, 2025** (one-year period).

**Text Message Logs** - Records of all sent and received SMS/MMS messages with phone number **(615) 423-4768**, including timestamps and recipient/sender numbers for the same time period.

### TIME PERIOD JUSTIFICATION

The requested **one-year timespan (May 28, 2024 to May 28, 2025)** is reasonable and necessary for the following legal reasons:

1. **Pattern of Harassment Documentation:** A full year of records is necessary to establish patterns of unwanted contact and harassment that may have escalated over time.

2. **Ongoing Safety Concerns:** The records are essential to document the scope and frequency of communications related to ongoing safety concerns in connection with **Taft v. Barresi, et al.** (Case No. 3DSS-25-0000044), where protective restraining orders were issued pursuant to HRS § 604-10.5. These safety concerns extend to harassment of publicist Javonti Thomas and music performer Angela Gayle Meador, whose phone

---

1

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

**Protection from Harassment and Stalking of Professional Relationships:**
The records are necessary to identify and prevent stalking behavior by ▓▓▓▓▓ (subject of restraining order Case No. 3DSS-25-0000044) who may be using intermediaries, including publicist Javonti Thomas (defendant in the underlying case), to engage in persistent unwanted publications and contacts. The phone records will help protect Plaintiff Taft and Angela Gayle Meador, and legitimate publicist professionals from coordinated harassment campaigns that undermine professional integrity in the entertainment and arts industries.

## T-MOBILE'S STATED COOPERATION

Based on communications with T-Mobile representatives (attached as supporting documentation), T-Mobile has indicated willingness to assist with subpoena compliance to help prevent stalking and harassment. A T-Mobile service representative specifically stated they would "assist with the number change and any other related requests" and that they are "committed to helping [the affected party] to the best of our ability."

## ACCOUNT INFORMATION

**Primary Account Holder:** Angela Gayle Meador
**Phone Number:** (615) 423-4768
**Carrier:** Powertel Nashville (T-Mobile subsidiary)
**Service Location:** Nashville, Tennessee
**Account Status:** Active (as of recent T-Mobile communications)

## METHOD OF PRODUCTION

Records may be produced electronically in native format (CSV, PDF, Excel, or TIFF) and should be:

1. **Transmitted securely** via email to Plaintiff at: taftchristina.ceo@gmail.com

2. **Uploaded** to a secure file transfer platform for Plaintiff's access

3. **Made available** for retrieval from T-Mobile's Legal & Emergency Response Department

## DEADLINE FOR COMPLIANCE

The requested records must be produced no later than **June 16, 2025**, prior to the scheduled hearing in this matter.

---

3

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

## NOTICE OF ENFORCEMENT

This subpoena is issued under the authority of the District Court of the Second Circuit, State of Hawai'i. Noncompliance without legal justification may result in court-imposed enforcement measures including contempt proceedings.

If you object to any portion of this subpoena, you must file a motion to quash or modify the subpoena within the timeframe prescribed under HRCP Rule 45(c).

### Legal Precedent Supporting This Request

**One-Year Timeframe Reasonableness:** *United States v. Graham*, 846 F.3d 384 (4th Cir. 2017), cert., 138 S. Ct. 455 (2017), establishes that a one-year period for telecommunications records is reasonable and proportional when seeking to establish patterns of communication relevant to ongoing legal proceedings and safety concerns.

**Stalking Prevention and Professional Relationship Protection:** *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002), cert., 539 U.S. 958 (2003), recognizes that courts have authority to compel production of communication records when necessary to prevent coordinated harassment campaigns that threaten both personal safety and professional relationships, particularly in cases involving systematic interference with legitimate business operations.

## CERTIFICATION

I hereby certify that this subpoena is issued in good faith and is necessary for the presentation of evidence relevant to the claims and defenses in the above-captioned action, specifically relating to:

- Prevention of stalking and harassment
- Documentation of unwanted communications
- Protection of professional relationships in the arts and entertainment industry
- Enforcement of existing protective orders

**DATED:** May 28, 2025

## ISSUED BY THE COURT

*This subpoena is issued pursuant to existing court orders and protective measures designed to prevent harassment, ensure safety, and preserve evidence relevant to ongoing civil proceedings involving professional misconduct and interference with business relationships in the creative arts sector.*

4

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile



more information; however, since you are not logged in, our access is limited. I appreciate your understanding.



Since her number is recognized by our T-Mobile system, we are able to assist her with the number change and any other related requests.



I would be happy to assist you, but I am not fully equipped to answer your question. I recommend reaching out to our team over the phone, as they may be able to provide the information you need. Alternatively, you may be referred to the Legal and Emergency Response (LER) department for further assistance.

C

5

Exhibit A – Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile



Could you please provide her mobile number?



Thank you for providing this information. To assist her further, could she please call us at 611 or 1-800-937-8997? We are committed to helping her to the best of our ability and will provide you with any necessary information you may need.

As you are currently not logged in, our access is limited. However, once she calls in, we will have enhanced coverage and tools available to assist you better.

This is the T-Mobile Hotline, and it has successfully recognized your friend's number.



6

Exhibit A -- Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

| Place: | [X] Wailuku Division | 2145 Main Street, Courtroom 3D, Third Floor, Wailuku, Hawai'i 96793 |
| --- | --- | --- |
| | [ ] Lahaina Division | 1870 Honoapi'ilani Highway, Lahaina Hawai'i 96761 |
| | [ ] Hana Division | 4974 Uakea Road, Hana, Hawai'i 96713<br>(Hana Cultural Center corner of Uakea Road and Keanini Drive) |
| | [ ] Molokai Division | 55 Makaena Place, Kaunakakai, Hawai'i 96748 |
| | [ ] Lana'i Division | 312 8th Street, Lana'i City, Hawai'i 96763 |

| Date & time: | JUN 1 6 2025          1 : 30 pm |
| --- | --- |

If you need to mail or deliver anything to the Court, use this address, even if your hearing is at another location

**2nd Circuit Court**

**2145 Main Street, Room 106, Wailuku, Hawai'i 96793**

| Clerk's signature: | /sgd/ A. KAILI (seal) | Today's date: | MAY 1 9 2025 |
| --- | --- | --- | --- |

ID-P-302
(rev 3/24/2022)

7

Exhibit A  - Subpoena Duces Tecum to Legal and Emergency Team for Phone Records at T-Mobile

RETURN OF SERVICE; ACKNOWLEDGMENT OF SERVICE                                    Form #2DC47

| IN THE DISTRICT COURT OF THE SECOND CIRCUIT WAILUKU _____ Division STATE OF HAWAI'I | |
|---|---|
| **Plaintiff(s)** CHRISTINA TAFT | **Electronically Filed SECOND CIRCUIT 2DSC-25-0000091 30-MAY-2025 04:04 PM Dkt. 10 RAS** |
| | Reserved for Court Use |
| | Court Date: |
| | Civil No. 2DSC-25-0000091 |
| **Defendant(s)** JAVONTI THOMAS AKA JRT MEDIA PLANNING | Requestor(s)' Attorney (Name, Attorney Number, Firm Name (if applicable), Address, Telephone and Facsimile Number(s) CHRISTINA TAFT 747 LAUKAPU ST. HILO, HAWAII 212-718-1003 |

DOCUMENT(S) SERVED:

SUBPOENA DUCES TECUM; EXHIBIT A

| NAME OF PARTY SERVED: T-MOBILE USA, INC. C/O CORPORATION SERVICE COMPANY | ADDRESS WHERE SERVED: 1003 BISHOP STREET SUITE 1600 PAUAHI TOWER  Honolulu, HI 96813 |
|---|---|
| DATE SERVED: 5/29/2025 | MILEAGE $    6 |
| TIME OF SERVICE 01:27 PM | NUMBER OF MILES TRAVELED:    10 |

☑ **FULL OR**     PARTIAL RETURN OF SERVICE

I have read this Return of Service, know the contents and verify that the statements are true to my personal knowledge and belief. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF HAWAI'I THAT THE FOLLOWING IS TRUE AND CORRECT:**

1.   Deputy Sheriff or   Police Officer of the State of Hawai'i or ☑ person who is not a party and is not less than 18 years of age, do certify that I received a certified copy of the documents listed above and that I served same on the Party Served above on the Date and Time of Service and at the Address listed above within the State of Hawai'i as listed on the reverse.

| Signature: | PO BOX 283163 Honolulu, HI 96828 Phone 808-376-7720 Fax 800-678-7397 |
|---|---|
| Print/Type Name TAD OIE, CIVIL PROCESS SERVER | Print/Type Address, Telephone and Facsimile Numbers |

| Our Job # 90103 [barcode] RECEIVED (LD8) MAR 3 2025 | I certify that this is a full, true and correct copy of the original on file in this office _____ Clerk, District Court of the Above Circuit, State of Hawai'i |
|---|---|

REPHOGRAPHICS (06/10)  HovaComm 508 Certified

ROS  2D P-261 (Rev 11/30/15)

☑ **FULL OR**     ☐ **PARTIAL RETURN OF SERVICE** (continued)

☐ **PERSONAL:** By delivering to and leaving with _____ , personally.

☐ **SUBSTITUTE:** [District Court Rules of Civil Procedure 4(d)(1)(i)]. After due and diligent search and inquiry, I served the named party through _____

a person of suitable age and discretion then residing at said party's usual place of abode, since the party could not be found.

☐ **SUBSTITUTE:** [District Court Rules of Civil Procedure 4(d)(1)(ii)]. I served the named party through _____ , _____ authorized agent to receive service of process for said party.

☑ **BUSINESS/CORPORATION/GOVERNMENTAL ENTITY:** I served (name of business/corporation/entity) _____

T-MOBILE USA, INC. C/O CORPORATION SERVICE COMPANY

through   Steven Magallon _____ , who is the (position/title)

SERVICE AGENT

and who is the authorized agent to accept service for said Business/Corporation/Governmental Entity.

☐ **GARNISHMENT:** I served (Name of Garnishee) _____

through _____ , who is the (person/title)

and who is authorized to accept service for the above-named garnishee.

☐ **NOT FOUND:** After due and diligent search and inquiry, I am unable to find the party named above.

☐ **Special Circumstance:**

**APPROX. DESCRIPTION OF PERSON SERVED:** Age: 60, Gender: Male, Race: Caucasian, Height: 5' 11", Weight: 200, Hair: Gray Glasses: Yes

## ACKNOWLEDGMENT OF SERVICE

Signature of Person served: REFUSED TO SIGN DUE TO COMPANY POLICY

*DID NOT SIGN*

Print/Type Name

In accordance with the **Americans with Disabilities Act** if you require an accommodation for your disability, please contact the District Court Administration Office at PHONE NO. 244-2800, FAX 244-2849, OR TTY 244-2889 at least (10) working days in advance of your hearing or appointment date. For all civil matters, please call 244-2706 or visit the Service Center at 2145 Main Street, Room 141 Wailuku, HI 96793.

**RETURN OF SERVICE MUST BE FILED NO LATER THAN 24 HOURS (EXCLUDING SATURDAY, SUNDAY AND LEGAL HOLIDAYS) PRIOR TO THE RETURN DATE AT 2145 MAIN STREET, ROOM 106, WAILUKU, HAWAI'I 96793.**

REPROGRAPHICS (06/10)
RevsComm 508 Certified        Our Job # 90103     Page 2 of 2    ‖‖‖ ▓▓ ▓▒▏ ▙▚▚▞▞▟▜▚▓▌ ‖‖‖     ROS 2D-P-261

# EXHIBIT E

**T-MOBILE PRODUCTION DOCUMENTATION AND TRACKING INFORMATION**
This exhibit consists of T-Mobile production documentation, tracking information, and representative records identifying the categories and scope of records produced in response to the subpoena request.

The complete production exceeded 700 pages of telecommunications records and related data. Due to the volume of the production and the sensitive personal information contained therein, only representative pages are attached. The complete production is maintained by Plaintiff and can be made available to the Court upon request.

Provided On: June 22, 2025
Tracking ID: 5691938
RE: 6154234768
Case No.: 2DSC-25-0000091

**T · ·Mobile·**

All times below are reflected in Coordinated Universal Time (UTC).

| Date | Time | Duration | Call Type | Direction | Calling Number | Dialed Number | Called Number | Destination Number | IMSI | IMEI | Completion Code | Service Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/28/2024 | 00:07:45 | 134 | mtc | Incoming | 1615▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 00:31:39 | 52 | mtc | Incoming | 16155▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 00:35:29 | 9 | mtc | Incoming | 1615▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 01:00:32 | | mtc | Incoming | 1615▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 |
| 05/28/2024 | 02:15:42 | | SMSC | | 128 | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 02:15:42 | | SMSC | | 16154234768 | | 122 | | | | Completed Successfully | |
| 05/28/2024 | 09:46:03 | | SMSC | | 1615▓▓▓▓ | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 09:52:17 | | mtc | Incoming | 1615▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 |
| 05/28/2024 | 09:52:54 | 89 | moc | Outgoing | 16154234768 | 1615▓▓▓▓ | 1615▓▓▓▓ | 1615▓▓▓▓ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/28/2024 | 13:14:47 | | SMSC | | 16154234768 | | 16158▓▓▓▓ | | | | Completed Successfully | |
| 05/28/2024 | 13:14:47 | | SMSC | | 1615▓▓▓▓ | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 17:56:46 | 7 | mtc | Incoming | 1720▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 19:18:56 | 45 | mtc | Incoming | 1615▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 20:03:04 | 7 | mtc | Incoming | 1877▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 20:09:42 | 142 | mtc | Incoming | 1615▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 20:51:16 | | SMSC | | 16154234768 | | 42104 | | | | Completed Successfully | |
| 05/28/2024 | 20:51:16 | | SMSC | | 42104 | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 20:56:58 | 3 | moc | Outgoing | 16154234768 | 1615▓▓▓▓ | 1615▓▓▓▓ | 1615▓▓▓▓ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/28/2024 | 21:07:03 | | SMSC | | 97356 | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 21:07:04 | | SMSC | | 16154234768 | | 97356 | | | | Completed Successfully | |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 76 of 114 PageID #: 76

| Date | Time | Dur | Type | Direction | | | | | | | Status | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/28/2024 | 22:02:40 | 3 | mtc | Incoming | 1615▬▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 22:03:15 | | mtc | Incoming | 1615▬▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 |
| 05/28/2024 | 22:04:08 | 13 | moc | Outgoing | 16154234768 | 16155682027 | 1615▬▬ | 1▬▬▬ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/28/2024 | 22:07:20 | | SMSC | | 161▬▬▬ | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 22:08:06 | | SMSC | | 16154234768 | | 1615▬▬ | | | | Completed Successfully | |
| 05/28/2024 | 22:08:55 | | SMSC | | 1615▬▬ | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 22:09:02 | | SMSC | | 16154234768 | | 1615▬▬ | | | | Completed Successfully | |
| 05/28/2024 | 22:11:57 | | SMSC | | 1615▬▬▬ | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 23:28:35 | 20 | moc | Outgoing | 16154234768 | 16155682027 | 1615▬▬▬ | 161▬▬▬ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/28/2024 | 23:35:14 | 30 | mtc | Incoming | 1901▬▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/29/2024 | 01:23:30 | 58 | moc | Outgoing | 16154234768 | 16155682027 | 1615▬▬▬ | 161▬▬▬ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/29/2024 | 16:45:30 | 7 | mtc | Incoming | 1877▬▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/29/2024 | 16:56:18 | 8 | mtc | Incoming | 1202▬▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/29/2024 | 18:35:07 | 60 | moc | Outgoing | 1866▬▬ | 13608429999 | 13608▬▬ | 1360▬▬▬ | 310260149475513 | 356314950382240 | Completed Successfully | 029;29 |
| 05/29/2024 | 18:35:07 | | mtc | Incoming | 1866▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 |
| 05/29/2024 | 18:35:07 | 60 | mtc | Incoming | 1866▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 029 |
| 05/29/2024 | 18:36:11 | | SMSC | | 128 | | 16154234768 | | | | Completed Successfully | |
| 05/29/2024 | 19:28:52 | 2 | mtc | Incoming | 1615▬▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/29/2024 | 19:29:28 | 49 | moc | Outgoing | 16154234768 | 16155682027 | 161▬▬▬ | 1▬▬▬ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/29/2024 | 21:48:40 | 5 | moc | Outgoing | 16154234768 | 16155682027 | 1615▬▬▬ | 161▬▬▬ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/29/2024 | 21:51:02 | 10 | mtc | Incoming | 1877▬▬▬ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/29/2024 | 21:54:26 | | SMSC | | 16154234768 | | 1615▬▬ | | | | Completed Successfully | |
| 05/29/2024 | 21:56:22 | | SMSC | | 1615▬▬ | | 16154234768 | | | | Completed Successfully | |
| 05/29/2024 | 21:57:03 | | SMSC | | 16154234768 | | 1615▬▬ | | | | Completed Successfully | |
| 05/29/2024 | 21:59:14 | | SMSC | | 1615▬▬ | | 16154234768 | | | | Completed Successfully | |
| 05/29/2024 | 22:04:56 | | SMSC | | 16154234768 | | 1615▬▬ | | | | Completed Successfully | |
| 05/29/2024 | 22:06:32 | | SMSC | | 1615▬▬ | | 16154234768 | | | | Completed Successfully | |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Case 3:26-cv-00755   Document 1   Filed 06/03/26   Page 77 of 114 PageID #: 77

Provided On: June 22, 2025
Tracking ID: 5691938
RE: 6154234768
Case No.: 2DSC-25-0000091

**T Mobile**

All times below are reflected in Coordinated Universal Time (UTC).

| Date | Time | Duration | Call Type | Direction | Calling Number | Dialed Number | Called Number | Destination Number | IMSI | IMEI | Completion Code | Service Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/28/2024 | 00:07:45 | 134 | mtc | Incoming | 165▪▪▪▪▪ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 00:31:39 | 52 | mtc | Incoming | 1615▪▪▪▪ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 00:35:29 | 9 | mtc | Incoming | 161▪▪▪▪▪ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 01:00:32 | | mtc | Incoming | 16155▪▪▪ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 |
| 05/28/2024 | 02:15:42 | | SMSC | | 128 | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 02:15:42 | | SMSC | | 16154234768 | | 122 | | | | Completed Successfully | |
| 05/28/2024 | 09:46:03 | | SMSC | | 161▪▪▪▪ | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 09:52:17 | | mtc | Incoming | 1615▪▪▪ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 |
| 05/28/2024 | 09:52:54 | 89 | moc | Outgoing | 16154234768 | 161▪▪▪▪ | 1615▪▪▪▪ | 1615▪▪▪▪ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/28/2024 | 13:14:47 | | SMSC | | 16154234768 | | 161▪▪▪▪ | | | | Completed Successfully | |
| 05/28/2024 | 13:14:47 | | SMSC | | 1615▪▪▪▪ | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 17:56:46 | 7 | mtc | Incoming | 1720▪▪▪▪ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 19:18:56 | 45 | mtc | Incoming | 16155682027 | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 20:03:04 | 7 | mtc | Incoming | 1877▪▪▪▪ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 20:09:42 | 142 | mtc | Incoming | 1615▪▪▪▪ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 |
| 05/28/2024 | 20:51:16 | | SMSC | | 16154234768 | | 42104 | | | | Completed Successfully | |
| 05/28/2024 | 20:51:16 | | SMSC | | 42104 | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 20:56:58 | 3 | moc | Outgoing | 16154234768 | 161▪▪▪▪ | 1615▪▪▪▪ | 1615▪▪▪▪ | 310260149475513 | 356314950382240 | Completed Successfully | |
| 05/28/2024 | 21:07:03 | | SMSC | | 97356 | | 16154234768 | | | | Completed Successfully | |
| 05/28/2024 | 21:07:04 | | SMSC | | 1615▪▪▪▪ | | 97356 | | | | Completed Successfully | |

Information Provided By:
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

| Date | Time | Dur | | | | | | | | | Status | | Cell |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/18/2024 | 18:59:48 | 62 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS402 |
| 06/18/2024 | 19:05:09 | 75 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS402 |
| 06/18/2024 | 21:33:29 | 143 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS402 |
| 06/19/2024 | 21:04:42 | 36 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS402 |
| 08/05/2024 | 16:31:58 | 1 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS402 |
| 08/11/2024 | 14:00:28 | 3 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 09/10/2024 | 14:31:19 | | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS402 |
| 09/27/2024 | 15:00:12 | 21 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | CLTAS401 |
| 09/28/2024 | 16:02:51 | | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/12/2024 | 22:31:09 | 928 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | CLTAS402 |
| 10/17/2024 | 19:04:16 | 378 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/17/2024 | 19:11:11 | 407 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/17/2024 | 23:34:11 | 371 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/18/2024 | 17:17:38 | | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | CLTAS401 |
| 10/20/2024 | 17:20:56 | | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/20/2024 | 21:17:47 | 652 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/21/2024 | 18:18:59 | | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/21/2024 | 18:19:51 | 33 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/22/2024 | 23:17:17 | 34 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/22/2024 | 23:28:30 | 371 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 11/03/2024 | 20:15:57 | 525 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS402 |
| 11/05/2024 | 17:20:05 | | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | KCTAS402 |
| 11/05/2024 | 19:59:15 | 2 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS402 |
| 11/05/2024 | 22:41:02 | 8 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS402 |
| 12/06/2024 | 02:38:46 | 838 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS401 |
| 12/07/2024 | 20:40:35 | 2 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS401 |
| 12/08/2024 | 03:30:46 | 479 | mtc | Incoming | ▓▓▓▓ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 1 of 12

| Date | Time | Dur | Type | Direction | | Number | Number | Number | IMSI | IMEI | Status | Code | Tower |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/2024 | 19:51:00 | 42 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | DETAS403 |
| 12/15/2024 | 20:37:11 | 799 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | DETAS403 |
| 12/26/2024 | 19:22:54 | 1705 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | DETAS403 |
| 12/28/2024 | 15:35:25 | 764 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 12/28/2024 | 15:53:26 | 61 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 12/31/2024 | 22:13:19 | 121 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 12/31/2024 | 22:16:05 | 109 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 01/02/2025 | 22:51:13 | 2 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 01/25/2025 | 22:11:38 | 7 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/25/2025 | 22:44:48 | 5 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/26/2025 | 03:23:50 | 3 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/27/2025 | 00:34:30 | 743 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/27/2025 | 01:07:14 | 1457 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 041;11 | NVTAS403 |
| 01/27/2025 | 14:39:27 | | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | NVTAS403 |
| 01/27/2025 | 17:10:32 | 22 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 02/05/2025 | 03:47:53 | 2 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS401 |
| 02/05/2025 | 04:40:15 | | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | NVTAS401 |
| 02/05/2025 | 22:06:45 | | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | NVTAS401 |
| 02/05/2025 | 22:24:11 | 22 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS401 |
| 02/06/2025 | 02:23:34 | 6 | moc | Outgoing | | 13608429999 | 13608429999 | 13608429999 | 310260149475513 | 356314950382240 | Completed Successfully | 02B | NVTAS401 |
| 02/06/2025 | 02:23:34 | 6 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 02B;11 | NVTAS401 |
| 02/12/2025 | 16:30:27 | 17 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS401 |
| 02/12/2025 | 23:58:08 | 1867 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS401 |
| 02/19/2025 | 17:18:20 | 905 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 02/20/2025 | 02:14:29 | 3 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 02/20/2025 | 22:23:19 | 440 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 02/25/2025 | 20:54:26 | 1169 | mtc | Incoming | | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 80 of 114 PageID #: 80

# EXHIBIT F

## JULY 16, 2025 SUA SPONTE ORDER SETTING ASIDE ISSUANCE OF SUBPOENAS DUCES TECUM

This exhibit consists of the July 16, 2025 order entered by the Hawaii court setting aside the issuance of subpoenas duces tecum.

Electronically Filed
SECOND CIRCUIT
2DSC-25-0000091
16-JUL-2025
02:26 PM
Dkt. 27 ORD

IN THE DISTRICT COURT OF THE SECOND CIRCUIT
STATE OF HAWAI`I
WAILUKU DIVISION

CHRISTINA TAFT,                      )     CASE NO. 2DSC-25-0000091
                                     )
          Plaintiff,                 )
     vs.                             )     SUA SPONTE ORDER SETTING
                                     )     ASIDE ISSUANCE OF SUBPOENAS
                                     )     DUCES TECUM; CERTIFICATE OF
JAVONTI THOMAS, etc.,                )     SERVICE
                                     )
          Defendant.                 )
_____)

SUA SPONTE ORDER SETTING ASIDE ISSUANCE OF SUBPOENAS DUCES
TECUM; CERTIFICATE OF SERVICE

The Court hereby sua sponte orders to set aside the issuance of Subpoenas
Duces Tecum filed on May 28, 2025 (Docket No. 7), on June 25, 2025 (Docket No. 15),
and on July 10, 2025 (Docket No. 23).

Dated: Wailuku, Maui, Hawai`i, July 16, 2025

_____  LS.
Judge of the above-entitled Court
Annalisa Bernard Lee

# EXHIBIT G

## JULY 21, 2025 HEARING TRANSCRIPT EXCERPTS

This exhibit consists of excerpts from the July 21, 2025 hearing transcript in the Hawaii proceeding.

Official Transcript from Court Hearing – July 21, 2025

# IN THE DISTRICT COURT OF THE SECOND CIRCUIT
## STATE OF HAWAI'I
## WAILUKU DIVISION

### Christina Taft v. Javonti Thomas – Case No. 2DSC-25-0000091

**Judge: Annalisa Bernard Lee**
**Plaintiff: Christina Taft**
**Defendant: Not served or present at hearing**
**Witness: Angela Gayle Meador**

THE CLERK: Up on record, calling 2DSC-25-091, Christina Taft v. Javonti Thomes.

THE COURT: Hi, Ms. Taft. Could you state your name, please?

PLAINTIFF: Hello, Your Honor. It's Christina Taft.

THE COURT: Good afternoon. Is Javonte Thomas present on Zoom as well? Jovonti Thomas?

THE COURT: Okay. All right, Ms. Taft, you still have not served Mr. Thomas with this complaint. So we will need to, if you would like, we can continue this so that you can attempt to serve him.

PLAINTIFF: Yes, I would. And also, Your Honor, did you see my ex parte motion to strike the unauthorized declaration in for a protective order?

THE COURT: Yes. So for the record, the court did see the Plaintiff's ex parte motion to strike the unauthorized declaration for protective order to vacate sua sponte order under docket 27, as well as your memorandum of law, declaration, and certificate of service. Ms. Taft, I'm going to have you sworn in at this time.

THE CLERK: Ms. Taft, please raise your right hand. Do you solemnly swear that the testimony about to give will be the truth, all truth, and nothing but the truth?

PLAINTIFF: Yes.

COURT CLERK: And your name for the record.

PLAINTIFF: Christina Taft.

THE COURT: Thank you. All right. So Ms. Taft, the court filed a sui sponte order setting

1

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 84 of 114 PageID #: 84

aside the issuance of the subpoena deuces tecums that you filed under docket 7 and 15. In preparing for the calendar and reviewing your case the court did not understand and and also re reading the subpoena deuces tecums that you filed um both on May 28th as well as June 26th. I didn't see the relevance of the documents that you were requesting. Essentially,

according to your statement of claim filed on May 19th in this case against Javonti Thomas, you allege that you hired a defendant to provide public relations services, including media outreach, press release distribution, and interviewing scheduling. You allege that he owes you $1,200, for failure to perform contractual obligations, essentially a material breach of contract, fraudulent misrepresentations regarding his qualifications and services, unjust enrichment, tortious interference with your business relationships, targeting associated for film, music, art cases, and nonprofits.

So, upon reviewing of the subpoena deuces tecum, the court did not understand why you were requesting phone documents from a person by the name of Angela Gayle Meador with who is not the defendant. And then upon further review of your subpoena deuces tecum, and the alleged legal authority and justification for it, you cite TRO cases in the Third Circuit against another non-party named Mr. Barresi.

The court went ahead and looked up those cases and saw that, you know, you specifically cited 3DSS-25-044 and you allege that you need Ms. Meador's phone records. Sorry, I'm looking at the wrong one. Oh, there it is. A whole year of her phone records and state in your subpoena that the records are essential to document the scope and frequency of communications related to ongoing safety concerns in connection with Taft v. Barresi et al., a Third Circuit TRO case, and you state that a protective restraining order was issued pursuant to HRS 604 10.5. And you also say that the most recent month for the second subpoena deuces tecum will document ongoing harassment despite prior restraining orders in the related case.

The court looked up 3DSS-25-0044 and noted that the defendant in that case was never served so he did not even know that the, allegedly didn't even know that the temporary restraining order had been filed and the judge in that case dismissed it. So that called question into the court's mind as to your intentions of filing the subpoena deuces tecum that are appear to be completely unrelated to Mr. Thomas's case as your publicist.

And for that reason, I am ordering you to show cause today why you should not be deemed a vexatious litigant by what appears to the court to be engaging in frivolous discovery tactics and subject to pre-filing order and other relief requested. So please explain to the court how this is relevant.

PLAINTIFF: Hi, Your Honor. Specifically about my publicist, Javonti Thomas, we were

2

reaching out to reporters regarding artist safety and Barresi's documented harms to witnesses, both of which are directly related to....

THE COURT: (unintelligible) to the fact that you say that he breached the contract?

PLAINTIFF: Because his contract was to reach out about my U.S. district case in Central California, which is still ongoing. And it was related to reaching out to CBS News journalist Ross Palombo. As shown in Exhibit A, my retained publicist, Mr. Thomas, was lawfully engaged in professional media outreach regarding that and had a legitimate contact. This media contact was undertaken with my first amendment rights and in furtherance of efforts to establish a pattern of harassment and intimidation, against publicists and artists. The telecoms...

THE COURT: I don't understand how an alleged harassment case against Mr. Barresi has anything to do with Ms. Meador's phone records and how that has anything to do with the fact that you're allegedly suing Mr. Thomas for breach of contract. It appears to the court that what you're doing is you're using the legal system in an unrelated case to get another person's confidential personal information through their phone records.

And I'm saying this because I also looked up the docket and looked up your filing history in the First Circuit as well as the Third Circuit, and I noticed that you did the same thing in other cases where you would file subpoena deuces tecums for people's phone records that have nothing to do with the cases that you're filing. So again, explain to the court how I should not deem you a vexatious litigant.

PLAINTIFF: Or you're asking about my landlord-tenant case. I subpoenaed records because Paul Barresi's gun case.

THE COURT: I'm asking about how you subpoenaing Ms. Meador's personal phone records has any relevance to this case, alleged lawsuit against Mr. Thomas for a breach of contract.

PLAINTIFF: Mr. Thomas was contracted about Paul Barresi and witness intimidation and I specifically was reaching out to journalists regarding my licensed private investigators having declarations and they were proving witness intimidation and so Barresi continuously contacted Meador and also had a phone recording that was illegal between me and her. And then he continuously published it 16 times repeatedly over three years, which...

THE COURT: Yes. That sounds like it has to do with the TRO that was dismissed in the Third Circuit.

3

PLAINTIFF: Because Thomas needs to know, I need to know how Thomas can react to these situations to properly present himself to journalists. He didn't present his work correctly. And I've been in litigation for that unauthorized filings that was not via motion to quash, only a party or the mobile or every (unintelligible) companies can file motions to squash. I was never…

THE COURT: …(unintelligible) of Meador's phone records where you can look at who she called what text messages she wrote i don't understand how that is at all related to Mr. Thomas's case even with what you're trying to allege to the court right now.

PLAINTIFF: Sure. It's related to Paul Barresi only and how he continuously, for my witnesses, I subpoenaed Meador in the restraining order case against Barresi. I also have text messages from 2022 and also showing that um it was against her consent for Barresi to release these recordings and regards to Thomas we were specifically conveying to reporters, emailing reporters, talking with reporters about this and regarding witness intimidation and tampering. And so, I was looking for records to prove this harassment and also related to his contract that he didn't perform his contract. And because he didn't perform his contract, I faced damages where now witnesses are intimidated. I can't speak to witnesses. I can't have my lawful claims. And because of that, I was proving more damages and how he specifically, because he didn't do his job, I am faced with even more problems where now I'm having to be scared to live in Hawaii because Barresi is faxing to Hawaii and fixating on my property and where I live. I am not even in Hawaii right now because I'm too scared to be there.

So I was proving how he, because he breached this contract, now I'm still suffering and I can't reach out to reporters correctly to protect myself from these false accusations, this scandal, this immaterial matters, of Barresi naming all these different figures that did not give him consent. He does not work for them.

He is a celebrity stalker, and he stalked my family. He illegally recorded my father. He sent me my mother's coroner's report and continuously sent me e-mails. I had to use a lot of different um resources to protect myself and now i'm being failed um by this by this court because they didn't even file a motion they didn't use lawyers.

THE COURT: You filed a 26 page uh document um under uh and signed it under rule 11. um how did you, how did you write this? Did you use AI?

PLAINTIFF: No. For that I asked a legal drafter. Um his name was Danny and so he helped with that practice law in the state of Hawaii can I be left around legal

THE COURT: Is this lawyer a state employee? Okay so he's not licensed to practice law in the state of Hawaii?

PLAINTIFF: No, I'm pro-se.

THE COURT: And in writing this, did you read any of the case law that you cited to or any of the rules of law that you cited to?

PLAINTIFF: I looked at rules of law and that it is required that I also knew that 45A required...

THE COURT: I am asking if all of the rules of law that you cited in your 26-page document that you filed. alleging that the court is not following the law.

PLAINTIFF: I looked at a lot of different laws. I relied on his...

THE COURT: I'm not asking you if you looked at a lot of different laws. I'm asking you if you read the rules of law that you cited in the document that you filed, your ex parte motion to strike an unauthorized declaration for a protective order to vacate the court's sua sponte order, your memorandum of law, your declaration. In your memorandum of law, did you read any of the law that you cited to? Did you read any of the case law? For example, if I were to ask you to tell me what the case T-Mobile Inc. and AT&T Corp. stands for, can you explain that to me? Can you tell me what that case is about?

PLAINTIFF: That case is related to phone records and privacy and responding to subpoenas. I know that according to, I relied on my paralegal to understand it. I only had two days to respond because for ex parte, I have to respond immediately and I only found out a day before my filing. So and you know why I would not report it.

THE COURT: Because upon reading it, it occurred to the court that you. used artificial intelligence, perhaps, or it was not written by an attorney. For example, on page three, you cite Hawaii Rules of Civil Procedure Rule 45C3A to state that any challenge to a subpoena must be raised by a party or recipient via a duly filed motion to quash or modify, and you cite this alleging that the court has no authority to sua sponte, quash, or set aside the subpoenas that I did, there is no such thing as HRCP Rule 45C3A. It does not exist.

It does not exist, ma'am. You cited a completely non-existent rule of law. So how is the court to believe that anything that you're saying is not frivolous?

PLAINTIFF: From what I understand from when I subpoenaed T-Mobile Records against Paul Barassi is that...

5

THE COURT: I am saying why are you citing law that does not exist?

PLAINTIFF: I because it was supposed to support my argument that there has to be a motion to quash. People need to be served according to the federal appellate..

THE COURT: You have to cite law that doesn't exist to support your argument?

PLAINTIFF: From what I believe, it exists and it's related to phone company records. I'm a pro se person.

THE COURT: I'm telling you that the Hawaii Rules of Civil Procedure Rule 45C3A, which you cited to multiple times in your document, is non-existent, does not exist.

PLAINTIFF: Oh, what I think it was, I think it was related to subpoenas in U.S. District Court for Rule 45, which declares that not either a party or recipient has to file a motion to quash, and that people can't just object unless actually the telecommunications company or the party objects to it with a filing. And so, I think that was an error by my paralegal to cite 45, because I know in the U.S. District Court, 45 is related to subpoenas, which is FRC. I'm sorry, that was an error of the citation.

THE COURT: Okay. All right, so again, Ms. Taft, the court has ordered you to show cause why you should not be deemed a vexatious litigant by your history of filing cases and also within those cases, filing subpoena deuces tecum for people's personal phone records that don't appear to be related to the cases that are filed. For example, in this particular case again your, you filed the complaint against Javoni Thomas for $1200 for a breach of contract and you're asking for two separate subpoena deuces tecum of a whole year of someone's confidential personal text messages and information.

I don't see how that is, again, relevant. It appears to the court that it was frivolous. And it also appears to the court that you're engaging in again frivolous discovery tactics. Um so I'm going to give you one last statement to show cause why you should not be deemed a vexatious litigant. I will tell you right now that all of the explanations that you just gave me is not persuasive to the court.

PLAINTIFF: Right, Your Honor...

THE COURT: And again, I'm saying this based on looking at your filing history in the First Circuit, Third Circuit, and in this case before the court today. There appears to be a pattern. And the pattern is frivolous discovery tactics.

PLAINTIFF: Your Honor, I, as a pro se litigant, I'm also a process server in Hawaii, and I was taught that I'm allowed to file subpoenas and specifically in relation to my case's

6

needs to understand what's going on in my situation. And also, I filed with good faith that I am protecting people from harassment and harm, specifically from an individual that has repeatedly sent me harassing texts and phone calls. As far as I did not know that Hawaii doesn't typically listen to issues from the mainland. In regarding to California, if an individual is in California and they're sending texts or phone calls or emails, Usually, I had to discover, unfortunately, on my own. I was a new resident to Hawaii three and a half years ago, and I didn't realize that I couldn't be protected under that statute.

I didn't know how to write the complaint correctly. I was just trying to show that I received the messages and it's terrifying to me. I had to go to the FBI in January to March 2024 because I asked Honolulu police and they recommended that I go to the FBI since these people were from California and other states. I was interviewed, and they said victim services might contact me. But I continued to call them, and they recommended that I filed a lawsuit. And so I followed what they said, and I filed a lawsuit. I, through my process server, he said we have rights to file subpoenas and that I can – find, you know, information.

He has served other pro se litigants in Hawaii that have filed subpoenas to veterinarian services, for medical records, for those kinds of issues. I was still trying to prove my harassment case, but unfortunately, since I, since Barresi wasn't in California, wasn't in Hawaii, I couldn't receive a permanent restraining order, which I didn't realize was something that was a Hawaii issue, unfortunately.

THE COURT: In the Third Circuit, didn't you tell the judge that Barassi lived in Hilo and your process server was still attempting to look for him in Hilo?

PLAINTIFF: The wording was that my process server wanted to look for him in Hilo and look for him in Hawaii.

THE COURT: So why did you tell another court on the Big Island that the reason that you needed continuances was because your process server was looking for his address in Hilo?

PLAINTIFF: From what I understood as a new Hawaii resident and two and a half years is that my process server said that we need to see if he's stalking you here, if he's followed you to Hawaii, if he has come here because apparently it's a higher standard for restraining orders here. And so, I had to say and, you know, see if he will come here, if he would escalate to that or if he had followed me here. So that is something I just realized I can't get a restraining order. I'm actually on the East Coast right now because I'm trying to see if I can get protection online from phone. He also contacted my family and about my poor mother. And unfortunately, I just I did not. I know the nuances. I tried to obtain

7

a lawyer for the first issue when I was getting harmed in 2023. And during that escalation from Barresi, and unfortunately, I couldn't get a lawyer to help me write. I had to get a lawyer to do a cease and desist in 2024. And then they just kind of took off. They were through LegalShield, an insurance company. And so, it was about $30, but I couldn't, I haven't been able to obtain anyone to help me. Part of the reason is because Barresi is related to, he uses people's names from Hollywood and things like that. And I guess they think, well, usually people can get a restraining order easily, but I haven't been able to. I had to learn how to do declarations where I had to do...

THE COURT: All right, Ms. Taff, I'm going to stop you only because I asked you to give me an order to show cause as to how the subpoena deuces tecums requesting Ms. Meador's personal information um you specifically requested 12 months of her information from June 2023 to June 2024 plus the most recent month um i don't see how that's i mean you asked for text message logs um and you still haven't shown the court how that is relevant to the case against Mr. Thomas. And you haven't explained to the court why you did this in the First Circuit and the Third Circuit as well.

So it still appears to the court that you are trying to get people's personal information through the phone company of their text messages and their phone history for a whole year that appears to be unrelated to the cases that you're filing these subpoena deuces tecums for. So you have not shown the court good cause that you should not be deemed a vexatious litigant. You have not shown the court that you have not filed these subpoenas to conduct unnecessary discovery or that you engaged in any other tactics that are frivolous. And so I am finding that you are a vexatious litigant under 634j subsection 3.

And I'm also going to enter a pre-filing order prohibiting you from filing any new litigation in the courts of this state on your own behalf without first obtaining leave of the presiding court where the litigation is proposed to be filed. Additionally, I'm going to issue a monetary sanction in the amount of $100 for citing law that does not exist. And that will be paid to the clerk of the court forthwith. So this really only pertains to the subpoena deuces ticums that were filed in these cases that, again, the court found to be unnecessary discovery and frivolous.

In terms of the case against Mr. Thomas, he still has not been served yet. So I will continue this to allow you to serve him. This matter will be continued for a month to Monday, August 18th at 1 30 in the afternoon.

And then i have a question for you, Ms. Meador, did you receive anything from T-Mobile? Oh what happened?

MS. MEADOR: I um...

8

THE COURT: Yes. Did you did you actually receive anything from T-Mobile?

MS. MEADOR: I did not. And that includes the...

THE COURT: I'm sorry, can you please activate your video so that we can see you?

MS. MEADOR: Excuse me? Yes, one second. This is my first time on Zoom.

THE COURT: Oh, Ms. Meador. I'm sorry, Ms. Meador. I meant Ms. Taft.

MS. MEADOR: Oh, that's okay. The two times that she got my records in the other Hawaii cases as well as this subpoena and the one in California, T-Mobile did not notify me at any time.

THE COURT: Okay. Ms. Taft. Thank you for sharing that, Ms. Meador. Ms. Taft, I'm allowing Ms. Meador to be on Zoom and to testify in this case or to speak today because she is the direct subject of your subpoena deuces tecum. And because she is the actual subject, her personal information is the subject of your subpoena deuces tecums, the ones that you filed, the court finds that she is a non-party, but she is subject to the subpoena. She also has a constitutional right to privacy, and therefore she has standing to object to her personal information being used in an unrelated case. So this is why I'm allowing her on Zoom today to speak during your case.

But my question is, the subpoena deuces tecums that you did file with the court asks T-Mobile to appear in person to hand over the documents. In your, in the filings that you filed, you mentioned something about T-Mobile faxing you or emailing you things. Did they, did you actually receive any of Ms. Meador's phone records from T-Mobile?

Ms. Taft?

PLAINTIFF: Oh, uh, hello, your honor. Yes, I received a year of records from 2025 to 2024, which showed that Barresi called her or there was some interaction. I haven't.

THE COURT: Where are those records? Yes, where is it?

PLAINTIFF: They're emailed to me from T-Mobile.

THE COURT: They were emailed to you?

PLAINTIFF: Yes.

THE COURT: So, in light of that and the fact that the court did do a sua sponte motion expert motion to set aside the subpoena deuces tecum also T-Mobile did not follow the

9

court's subpoena order because the subpoena order commands um an agent of T-Mobile to appear in court to hand over the documents which they did not do. They just sent it to you via email so i am going to order that…Hold on one moment.

I'm going to order you to immediately destroy that email of Ms. Meador's phone records. And you said that they sent it to you via email. So there's no hard copy of it or anything on a disc or any thumb drive or anything like that. It was just an email. Was it like on a zip drive? How did they email it to you?

PLAINTIFF: It was emailed to me because T-Mobile found that what I was saying, Paul Barresi was stalking me, that they found that, they sent an email to me. So, it was on an Excel file.

THE COURT: Okay, I'm ordering you to destroy that. And you're not allowed to use it in any way. You're not allowed to share it. You are not allowed to use it in any other of your potential filings that you want to file. You are ordered to destroy those phone records that are Ms. Meador's personal information, that I'm finding that you received from a subpoena deuces tecum that is completely unrelated to the case that you filed it in. Do you understand?

Ms. Taft?

PLAINTIFF: Is there a way I can appeal this with a lawyer or do something with that?

THE COURT: You do not have the right to appeal.

PLAINTIFF: And how does this impact my other cases? Is this…

THE COURT: You received Ms. Meador's personal information a whole year of her phone records and text messages from T-Mobile by filing a subpoena for her records in a case that's completely unrelated. So I, and the court quashed that motion, the subpoena deuces tecum, and I'm ordering you to destroy what you have received from T-Mobile. Do you understand the court's order?

PLAINTIFF: I, so, you're saying I can't appeal or say that I have rights to my First Amendment regarding….

THE COURT: I said nothing against your, I said nothing about your First Amendment rights. I said two things. One, you are to destroy what you have received from T-Mobile because it includes Ms. Meador's personal confidential information that you received from T-Mobile from a subpoena deuces tecum that is completely unrelated to the case that you filed it under. That's what I'm saying. So, I'm ordering you to destroy what you

10

have received from them.

You're telling the court under oath that you received it via email and that you didn't actually get a hard copy. Because if you told me that you got a hard copy of a disc or a thumb drive or something, I would have ordered that you give it to the court and I would put it under seal. But you're telling me that you got it emailed to you. So, unless I were to order you to forward it to the court, um actually i should order you to forward it to the court. Do we have an email address that she can... no okay. Okay. We can't do that. All right so, because you can't even forward it to the court based on your statement to the court, under oath, that you received an email from t-mobile i am ordering you to delete that email and get rid of the phone records that you obtained from T-Mobile regarding Ms. Meador.

So my question is, do you understand the court's order?

PLAINTIFF: I understand your order.

THE COURT: OK. And then the second part is that this is a small claims case. So in small claims court, you do not have the right to an appeal. So that's me answering your question.
I should also, for the record, seal um the subpoena deuces tecums that were filed in docket 7 and docket 15 because they do contain Ms. Meador's personal information including her phone number um so that will also be sealed from uh public um viewing.

So yes, Ms. Taft, you are also not only ordered to destroy or get rid of those phone records, but you are also ordered not to share anything with any third parties or any other person. And this, again, is because the court's ordering you to destroy it.

MS. MEADOR: Your Honor, can I ask a question?

THE COURT: Yes, Ms. Meador.

MS. MEADOR: She's already disseminated my records to a lot of people. Is there a way that she can or that somebody can notify those people that my records were obtained fraudulently?

THE COURT: Ms. Taft, is that correct? Have you already forwarded those records to other people? And why would you do that? I thought the reason that you got those records was for this case.

PLAINTIFF: I mentioned in my subpoena that I went to Rancho Cucamonga Sheriff's Department to report Paul Barresi and that I provided the phone record showing that he

11

called her 297 times in one year and escalating when I was trying to serve her a subpoena lawfully to Deputy Shultz in Rancho Cucamonga, California.

THE COURT: So, Ms. Taft, are you admitting under oath that you filed a subpoena deuces tecum for Ms. Meador's phone records, alleging that you needed that information for this case against Mr. Thomas? And then when you received her records, you went ahead and used it in another, for a separate matter? Is that what you're saying?

PLAINTIFF: Sorry, I'm saying that it says if I…

THE COURT: You're saying that you used her phone records that you received in a subpoena deuces tecum in this case in another matter?

PLAINTIFF: I'm, it says in the subpoena that I was also going to law enforcement to try to help myself and her and against Barresi. So, it says the clerk is in…

THE COURT: (unintelligible) … in your what you attached the subpoena deuces tecum is for allegedly for records in this case only. Not for you to go use in some other case.


PLAINTIFF: Since the clerk issued the subpoena and it said that it was related to other cases, I listened to the clerk that I was allowed to go to law enforcement and report to authorities.

THE COURT: What clerk told you that?

PLAINTIFF: The clerk that issued the subpoena. It shows in the second subpoena that I went to law enforcement.

THE COURT: Okay, so, the subpoena….

MS. MEADOR: She also submitted the records on the in another court case in California, a federal civil case that those records are now public record because she submitted them to that as well. And she's also been emailing them to every police officer that she found on my phone records. She that that I was calling, she emailed or mailed us post all of those people.

PLAINTIFF: No, I did not send that. No, I would not do that.

THE COURT: Ms. Taft, who did you share Ms. Meador's phone records with?

PLAINTIFF: I also shared it with Lieutenant Matthews in Goodlettsville, where she lives. And as I said, Deputy Schultz, who is in Rancho Cucamonga, California, when I did a

12

report that Barresi was disclosing our recording against consent. illegally according to California law. There's Penal Code 637.

MS. MEADOR: I can give you the case number where she also applied for a subpoena for my records in that case and they told her it was improper and struck the multiple subpoenas from the record. She got them from you guys and submitted them in that case anyways.

THE COURT: All right. You know, it's hard for the court because she's, the bell has already been rung. She's already sent it out to multiple people in other jurisdictions that the court has no control over. So, all I can do to the best that the court can do is order her to cease from sending and sharing that information with any other parties and also to destroy the information immediately.

And Ms. Taft, if the court hears that you have shared that information after I've ordered you to destroy it, you will be held in contempt of court for failing to abide by the court's orders. Is that understood?

PLAINTIFF: Yes, I understand. And I also want to add to the record that I don't even know any of the other phone numbers. I was only solely looking at Paul Barresi's phone number. I was not interested in any other person. And if he has told her that, that's not true. I would never do that. I have only been kind and supportive. And I was only trying to protect myself and others, including her, from Barresi. And so, no, I would never look up any other person. I have no interest in them. It was only Paul Barresi.

MS. MEADOR: And that's not correct because you've been texting all of my family members, including my 12-year-old niece, and telling them that I was raped.

PLAINTIFF: No, I didn't text her.

MS. MEADOR: Yes. You did.

THE COURT: All right. The court did, I believe, the most that I can do at this time. I have ordered Ms. Taft to destroy what she received from T-Mobile. I've ordered her not to share forward, share any of that prior to potentially destroying it. And I've also deemed Ms. Taft a vexatious litigant. So, she, Ms. Taft, you are no longer able to file anything without permission from the courts.

PLAINTIFF: I also want to say I think that's really sad and horrible that if someone texted you that. I think that's horrifying and sad. I don't even focus on sexual abuse. I think that there's multiple types of abuse, emotional abuse, psychological abuse and I would never…

13

MS. MEADOR: Can she stop addressing me? I don't want her to address me at all. Please tell her to stop.

THE COURT: Okay. At this time, the court is going to confirm the next court date. That was for Monday, August 18. This is for you, Ms. Taft, to effectuate service on Mr. Thomas. I'm also going to caution you to stay focused on this case, and well, you can't file anything without permission from the court. So in terms of anything relevant, the court will have to review that first. So again, this is continued to August 18 at 1.30 in the afternoon.

THE CLERK: Ms. Taft, I need a forwarding address for you to send the order of continuance, please.

PLAINTIFF: (Unintelligible).

THE CLERK: Is that the one on Mahealani Street in Kihei? Not. Thank you. You may log off now.

THE COURT: Okay, thank you.

(End of Hearing)

14

# EXHIBIT H

## JULY 24, 2025 ORDER REGARDING DISSEMINATION AND DESTRUCTION OF RECORDS

This exhibit consists of the July 24, 2025 order addressing dissemination of records and directing destruction of records and related materials.

IN THE DISTRICT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

Electronically Filed
SECOND CIRCUIT 2DSC-25-0000091
24-JUL-2025
10:34 AM
Dkt. 38 ORD

CHRISTINA TAFT,

      Plaintiff,

vs.

JAVONTI THOMAS, etc.,

      Defendant.

Case No. 2DSC-25-0000091

ORDER DETERMINING PLAINTIFF CHRISTINA TAFT TO BE A "VEXATIOUS LITIGANT" PURSUANT TO HRS §634J-1(3)

JUDGE: Honorable Annalisa M. Bernard Lee

### ORDER DETERMINING PLAINTIFF CHRISTINA TAFT TO BE A "VEXATIOUS LITIGANT" PURSUANT TO HRS §634J-1(3)

On May 19, 2025, Plaintiff Christina Taft ("Plaintiff") filed a Statement of Claim (Dkt.1) alleging that Defendant Javonti Thomas ("Thomas") owes her $1200.00 for "failure to perform contractual obligations, fraudulent misrepresentations regarding his qualifications and services, unjust enrichment, and tortious interference with Plaintiff's business relationships, tangibly associated with Film, Music, Arts Cases and nonprofits."

On May 28, 2025, Plaintiff filed a Subpoena Duces Tecum ("SDT") (Dkt. 7) directing T-Mobile USA, Inc. to produce and provide copies of the phone records, including text message logs, of a phone number registered to an Angela Gayle Meador in Nashville, Tennessee, from the period May 28, 2024 to May 28, 2025.

On June 25, 2025, Plaintiff filed a subsequent SDT (Dkt. 15) directing T-Mobile USA, Inc. to produce and provide copies of the phone records, including text message logs, of a phone

number registered to an Angela Gayle Meador ("Meador") in Nashville, Tennessee, from the period June 2023 to June 2024, plus the most recent month, "to complete the full documentation needed for critical protection from stalking activities, fear for safety and life, and retaliation to help Meador and Taft that T-Mobile has already begun providing."

On July 16, 2025 the Court filed a Sua Sponte Order setting aside issuance of the SDTs (Dkt. 27).

On July 16, 2025, the Clerk of the above-entitled court filed two (2) separate Notices of Ex-Parte Communication (Dkt. 29-30).

On July 18, 2025, Plaintiff filed an Ex Parte Motion to Strike Unauthorized Declaration; For Protective Order; To Vacate Sua Sponte Order; Memorandum of Law; Declaration; and Certificate of Service (Dkt. 33).

At a hearing on July 18, 2025, the Court ordered Plaintiff to show cause as to why she should not be deemed a vexatious litigant by engaging in frivolous discovery tactics and why she should not be subject to a prefiling order and other relief.

During the hearing, the Court allowed Meador, as the direct subject of the SDT, to address the Court. Meador related that Plaintiff has already received her personal records from T-Mobile USA, Inc. and has disseminated her records to several unrelated persons and agencies, including Sheriffs and Police Departments in other States. Meador further related that Plaintiff has used information within her phone records to contact Meador's friends and/or family members, such as a niece.

In short, Plaintiff was unable to explain how Meador's phone records for a timespan of one year, including text message logs, were relevant to her alleged breach of contract involving Javonti

Thomas. Moreover, Plaintiff admitted to receiving the phone records from T-Mobile USA, Inc. and disseminating the records to people and/or agencies unrelated to this case.

Based upon the foregoing, the Court concludes that Plaintiff did not show any good cause as to why she should not be deemed a vexatious litigant for conducting unnecessary discovery or engaging in other tactics that are frivolous under Hawaii Revised Statutes §634J-1(3).

Additionally, the court questioned Plaintiff on whether she used Artificial Intelligence to draft her Exparte Motion to Strike Unauthorized Declaration; For Protective Order; to Vacate Sua Sponte Order; Memorandum of Law; and Declaration. Plaintiff denied using Artificial Intelligence but stated that she hired a person not licensed to practice law to write the Exparte Motion for her. The court noted that the motion contained several citations of law that do not exist and sanctioned Petitioner $100.00 to be paid to the Clerk of the Court.

## ORDER

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. Plaintiff, Christina Taft, is hereby determined to be a Vexatious Litigant pursuant to HRS §634J-1(3).

2. Plaintiff shall not share or disseminate Meador's phone records.

3. Plaintiff shall not use Meador's phone records in any other case or in any capacity.

4. Plaintiff shall immediately destroy Ms. Meador's phone records and any personal information received from said records, that are within her possession.

5. Plaintiff shall immediately delete any email(s) received from T-Mobile in response to the SDTs filed in this case.

6. A Prefiling Prohibition is hereby entered against Plaintiff Christina Taft, prohibiting her from filing any new litigation in the courts of this State on her own behalf without first

obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. Disobedience of this order may be punished as contempt of court.

7. The Clerk of the court shall not to file any pleadings, motions, or other papers presented by Plaintiff Christina Taft without first obtaining an order from the presiding judge permitting the filing.

8. Plaintiff Christina Taft is sanctioned $100.00 for citing hallucinated law. This sanction shall be paid to the clerk of the court forthwith.

DATED: Wailuku, Hawaii, _____ JUL 2 4 2025 _____.

JUDGE OF THE ABOVE-ENTITLED COURT

**Annalisa M. Bernard Lee**

# EXHIBIT I

**EVIDENCE OF DISSEMINATION OF PLAINTIFF'S TELECOMMUNICATIONS RECORDS**

This exhibit consists of documents and communications evidencing dissemination of Plaintiff's telecommunications records to third parties.

-------- Forwarded message --------
From: **Christina Taft** <taftchristina.ceo@gmail.com>
Date: Mon, Jun 23, 2025 at 7:48 PM
Subject: URGENT - Request for Assistance for Victim Angela Meador - Case RCR2506114 - Life Safety Concerns
To: Brian Matthews <bmatthews@goodlettsville.gov>

**URGENT EMAIL TO LIEUTENANT MATTHEWS**

Dear Lieutenant Matthews,

I am writing to provide an urgent update to your case records regarding assault victim Angela Meador, who is in immediate need of protection and assistance.

After reporting to the San Bernardino County Sheriff's Department, I received concerning phone records from T-Mobile that demonstrate the urgent need to help Angela from ~~Paul Barger~~ ongoing stalking, as ~~Barger~~ has constantly been calling Angela apparently hundreds of times. Ms. Meador's life and safety are at serious risk due to ongoing harassment, stalking, and witness intimidation tactics being employed by ~~████████~~, who resides in Rancho Cucamonga, California.

**IMMEDIATE SITUATION AND URGENT REQUEST FOR HELP**

I have reported to the San Bernardino County Sheriff's Department in Rancho Cucamonga against ~~████████~~ for his illegal possession and weaponization of an unauthorized phone recording between myself and Angela Meador. **Case Number: RCR2506114.** In this recording, ~~████~~ fixates on disturbing "gun-to-the-head" content and continues to disclose it publicly (most recently on June 30th), which has left Ms. Meador in constant fear for her life.

The attached cease and desist letter to ~~████████~~ and the affidavit by licensed investigator Alejandro Hernandez (who interviewed Ian Herndon) detail the horrific nature of the assaults Angela endured and specifically describe the gun assailant who threatened her. Angela is terrified

that this person will discover she has spoken about what happened to her.

## CRITICAL EVIDENCE FROM T-MOBILE PHONE RECORDS

I received very concerning T-Mobile phone records today that provide stark evidence of the ongoing coercion and stalking. The data is alarming:

- **297 incoming calls from Barresi to Angela in only one year** (June 2024 to June 2025)
- **309 total calls between Barresi and Angela**
- **Angela only called him 12 times** - showing the one-sided nature of this harassment
- **On March 26th, 2025 alone, there were 9 calls between them** - all on the same day when I texted Angela once requesting to speak with her

This pattern clearly shows excessive and terrifying surveillance behavior. T-Mobile themselves advised that Angela needs to change her phone number to curtail the stalking.

## CRITICAL CLARIFICATION REGARDING 2025-0218482 INCIDENT REPORT

**Important correction**: The incident report 2025-0218482 incorrectly states that I called Angela on March 26th. This is not accurate. I sent only **ONE text message** that day stating I was at Lori Mattix's house (who worked for Johnny Depp's sister) and asking if I could please call her later that day (attached evidence).

According to the T-Mobile records, **Barresi called Angela 9 times on March 26th** - not me. I did not actually call Angela until March 30th, and per the subpoena I filed in US District Court, I only called her **4 times total on different days**: March 30th, April 1st, April 12th, and April 14th.

This date reference comes from Complaint Number: 2025-0218482 (content obtained from ██████ public threats).

## ANGELA'S FEAR AND NEED FOR PROTECTION

Angela has stated in her ex parte filing that she "received threats that she has evidence of," but she is too afraid to report Barresi directly due to the illegal phone recording and its disturbing gun-related content. ██████ has falsely manipulated her into believing she must depend on him and continue taking his calls, or face wrongful retaliation.

**I worry every day for Angela and have cried many times over these past months.** While I knew the situation was severe, these phone records reveal it's even worse than I realized, showing that Barresi has been repeatedly calling her constantly to monitor her activities. The evidence shows a pattern of systematic intimidation and control.

## URGENT REQUEST FOR ASSISTANCE

**Please help Angela by informing her that she can report as a victim to:**

- **Deputy Szulc and Deputy Acuna** at the San Bernardino County Sheriff's Department in Rancho Cucamonga, California
- **Case Number: RCR2506114**
- She can file a **Courtesy Report** with Goodlettsville Police, and they can forward it to the appropriate jurisdiction
- The case will be forwarded to the District Attorney
- **California authorities are very likely to help an assault victim** who is afraid due to gun threats and has been mercilessly stalked

## MY INTENTIONS AND CONCERN FOR ANGELA

For the record, my only intention was to help Angela feel better, feel safe, and no longer be afraid. I advised her years ago to change the identity of the threats in her reports and not to recant what her lived experience was in receiving intimidation. I would never harm or retaliate against Angela, nor would anyone in our support group.

Barresi has weaponized this illegal recording to maintain control over both Angela and myself, creating a situation where an assault victim is too terrified to seek help.

## DETAILS OF ANGELA'S ASSAULT EXPERIENCES

For context, Angela experienced horrific assaults at the hands of ██████████ in New Orleans in April 2015, where she was held against her will for three days, physically assaulted, sexually assaulted, and had her leg cut with a knife causing serious bodily injury. Shortly after returning to Florida, an unidentified assailant held a gun to her head and threatened to kill her if she spoke about what ██████ had done to her. This gun-to-head threat is specifically referenced in the illegal recording that ██████ continues to weaponize against Angela.

Under California law, it is against the law to make someone be silent about misconduct, harassment, or assaults. Both ██████ (who resides in California) and myself (who was in California in 2022 when the recording was made) are subject to these protections. Angela has the legal right to speak about her experiences without being silenced through intimidation or coercion.

## CONCLUSION

Angela Meador is a victim who desperately needs protection and support to break free from this cycle of intimidation. The T-Mobile phone records provide clear evidence of harassment and stalking behavior that must be addressed immediately.

I respectfully urge you to reach out to Angela and provide her with the information about how she can safely report to the California authorities. Her life and safety depend on getting the proper protection she deserves.

Thank you for your attention to this urgent matter. Please contact me if you need any additional information or clarification.

Respectfully,

Christina Taft CEO, Rescue Social Inc 212-718-1003 taftchristina.ceo@gmail.com

**Attachments:**

- T-Mobile Phone Records (CDR_Mediations_6154234768_17914462.xls)
- Cease and Desist Letter to Marton Csokas
- Affidavit of Angela Meador
- Text message evidence from March 26th

The defendant's repeated violations demonstrate a pattern of willful disregard for California privacy laws and warrant immediate law enforcement intervention.

If you could please provide how I can urgently do a police report about this for an investigation that is urgently needed, I will do what you advise to me.

Contact Information:
Christina Taft
212-718-1003

--
*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
<u>LinkedIn</u>

--
*Founder & Entrepreneur | Innovator | Egalitarian, Humanitarian*
<u>LinkedIn</u>

 A Letter to Deputy Szulc – Second Evidence Submission Summary Case.docx
20.5 kB

 Print 309 Mostly Incoming Calls Barresi to Angela - T-Mobile.pdf
498.8 kB

 309 times Calls Barresi Angela, Most Incoming - CDR_Mediations_6154234768_17914462.xls
1.7 MB

 CDR_Mediations_6154234768_17914462.xls
1.7 MB

 CA███████████ - PROTECTION NOTICE FOR ANGELA MEADOR AS FEDERAL WITNESS.pdf
108.6 kB

 Assaults Content Affidavit of Alejandro Hernandez 24-May-2025 21-40-52.pdf
1.1 MB

 Filed 2 US District Subpoena to Angela Gayle Meador June 21, 2025-compressed.pdf
8.8 MB

# EXHIBIT J

**EVIDENCE OF FILING AND USE OF PLAINTIFF'S TELECOMMUNICATIONS RECORDS IN SEPARATE PROCEEDINGS**

This exhibit consists of court filings and related materials evidencing the filing and use of Plaintiff's telecommunications records in proceedings separate from the Hawaii action.

Christina Taft
Plaintiff in Propria Persona
1700 Ala Moana Blvd Apt 2301
Honolulu, Hawaii 96815
Phone: 212-718-1003
Email: Ceo.Taft@Rescue-Social.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CHRISTINA TAFT<br><br>        Plaintiff,<br><br>vs.<br><br>PAUL BARRESI, ADAM R WALDMAN, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.: 5:24-cv-01930-TJH-DTB<br><br>[Hon. David T. Bristow, Magistrate Judge; Hon. Terry J. Hatter, Jr, District Judge]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION AGAINST ENTRY OF DEFAULT AND LATE EXTENSION OF TIME TO RESPOND TO SECOND AMENDED COMPLAINT**<br><br>*[Filed concurrently with Declaration of Plaintiff in Support; Exhibits in Support of Default, Reconciliations, and Against Defendant's Bad Faith; and Certificate of Service]*<br><br>Date: June 27, 2025<br>Time: Under submission |

under Fed. R. Civ. P. 15(a)(3), and there is no legal justification for Defendant's failure to respond.

Where, as here, a represented party has willfully defaulted with full knowledge of deadlines, for a *Second* Amendment, there can be no "excusable neglect." The burden to justify relief under Rule 6 is high and falls squarely on Defendant. See also *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010).

**B. Defendant's Bad Faith and Strategic Prejudice from Resolutions:**

The Defendant's late response only came after Plaintiff filed a subpoena to facilitate communication with Angela Gayle Meador, an important victim and witness in the case. Defendant's ex parte came well after the expiration of the 14-day response period for the SAC, showing that Defendant's actions were prompted by Plaintiff's proactive legal actions, not any intention to comply with court-imposed deadlines. Defendant failed to comply with the correct deadline, and only after Plaintiff's filing of a subpoena to Angela Gayle Meador did Defendant attempt to respond on June 26, 2025—well past the response deadline.

Plaintiff's subpoena and the repeated calling by Defendant Barresi to her 297 times in T-Mobile phone records demonstrate stalking behaviors and his control over Meador, a vulnerable assault victim and witness of financial abuse. This delay raises concerns about the validity of Defendant's claims of excusable neglect.

Plaintiff's filed subpoena's supportive letter and exhibits, as did the Second Amended Complaint, further revealed that Plaintiff reached out to co-defendant Adam Waldman to help Angela Meador and admitting he, like Meador, was unconsentedly recorded and these recordings illegally disclosed for coercion, that she reported to the Sheriff of these facts, and urged for reconciliation. Defendant Barresi's actions demonstrate that he wants control over vulnerable assault victim

Page 8
PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION AGAINST ENTRY OF DEFAULT AND LATE EXTENSION OF TIME TO RESPOND TO SECOND AMENDED COMPLAINT

Case 3:26-cv-00755    Document 1    Filed 06/03/26    Page 109 of 114 PageID #: 109

*Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993), which requires good faith, lack of prejudice, and a meritorious claim, none of which are present here. The Application also violates C.D. Cal. Local Rule 7-19 by failing to provide required declarations of notice, showings of irreparable harm, or demonstrations of inability to proceed by regular motion. As a represented party, Defendant bears heightened obligations under California Rules of Professional Conduct 1.1 and 1.3 for competent representation and diligent calendaring, making his procedural failures inexcusable. Plaintiff repeatedly notified of the Second Amended Complaint in emails with Cease & Desists to Protect Meador. Defendant offers no verified declaration directly from the assistant that allegedly errored under 28 U.S.C. § 1746, and his proffered rationale—a conclusory "calendaring error"—is facially insufficient to overcome the presumption of strategic delay, especially given the procedural posture and prior opportunities to engage.

Defendant's bad faith is compounded by his ongoing extrajudicial misconduct, including the unauthorized and unlawful recording and dissemination of private conversations in contravention of Cal. Penal Code §§ 632(a), 637.2(a) and 18 U.S.C. §§ 2511(1)(c), 2520. Plaintiff pleads for Meador's wellbeing as a result.

Plaintiff has submitted a formal subpoena to witness Angela Gayle Meador (see Exhibits 3-4, Docket 77), which outlines coercion and emotional distress caused by Defendant's campaign, and is directly tied to Defendant's litigation posture and obstruction. Subpoenaed telecommunications records (Exhibits 3) from T-Mobile confirm at least 297 calls initiated by Defendant Barresi to Ms. Meador, many of which occurred outside reasonable hours and were uninvited, suggesting a pattern of conduct meeting the statutory definition of stalking and civil harassment under Cal. Code Civ. Proc. § 527.6 and Penal Code § 646.9. Such behavior rises to the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION AGAINST ENTRY OF DEFAULT AND LATE EXTENSION OF TIME TO RESPOND TO SECOND AMENDED COMPLAINT

default where failure to respond is willful, or where the party acted with reckless disregard of procedural deadlines."

Moreover, the Clerk's delay in processing the default does not cure the Defendant's procedural noncompliance nor confer discretion upon the Court to retroactively excuse the omission. See *U.S. v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (Rule 55 is designed to prevent abusive delay and ensure orderly administration of justice).

**C. Defendant's Conduct Reflects Bad Faith, Procedural Abuse, and Prejudice to Plaintiff, Witnesses, and Co-Defendants**

Defendant Barresi's delay must be viewed in light of his pattern of unlawful conduct, procedural sabotage, and retaliation, foundational in the Second Amendment. Defendant's bad faith motive is revealed by timing and conduct.

Defendant's sudden litigation activity on June 26, 2025—occurring only after Plaintiff filed a subpoena to witness Angela Gayle Meador—exposes the retaliatory and obstructionist nature of his belated response. T-Mobile records from the past year demonstrate a disturbing pattern: 297 calls initiated by Defendant to Meador versus only 12 outgoing calls from her, with significant increases on dates when Plaintiff attempted lawful and supportive communication with Meador. On March 26, 2025, when Plaintiff sent one text asking Meador to call while at Lori Mattix's residence, Defendant Barresi bombarded Meador with 9 calls. On March 31, 2025, when process server Tracy Kroft attempted to serve the subpoena and Meador required police protection, Defendant Barresi escalated to 31 incoming calls. This conduct directly contradicts Defendant's counsel's prior representations about subpoena service while demonstrating Defendant's use of illegal recordings and unlawful disclosures controlling Meador and Taft into unwanted demise.

**T··Mobile·**

| Date | Time | Dur | | Type | | Number | Number | Number | IMSI | IMEI | Status | 011 | Cell |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/18/2024 | 18:59:48 | 62 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS402 |
| 06/18/2024 | 19:05:09 | 75 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS402 |
| 06/18/2024 | 21:33:29 | 143 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS402 |
| 06/19/2024 | 21:04:42 | 36 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS402 |
| 08/05/2024 | 16:31:58 | 1 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS402 |
| 08/11/2024 | 14:00:28 | 3 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 09/10/2024 | 14:31:19 | | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | PBTAS402 |
| 09/27/2024 | 15:00:12 | 21 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 09/28/2024 | 16:02:51 | | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | CLTAS401 |
| 10/12/2024 | 22:31:09 | 928 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS402 |
| 10/17/2024 | 19:04:16 | 378 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/17/2024 | 19:11:11 | 407 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/17/2024 | 23:34:11 | 371 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/18/2024 | 17:17:38 | | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | CLTAS401 |
| 10/20/2024 | 17:20:56 | | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/20/2024 | 21:17:47 | 652 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/21/2024 | 18:18:59 | | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/21/2024 | 18:19:51 | 33 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/22/2024 | 23:17:17 | 34 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 10/22/2024 | 23:28:30 | 371 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS402 |
| 11/03/2024 | 20:15:57 | 525 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS402 |
| 11/05/2024 | 17:20:05 | | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | KCTAS402 |
| 11/05/2024 | 19:59:15 | 2 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS402 |
| 11/05/2024 | 22:41:02 | 8 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS401 |
| 12/06/2024 | 02:38:46 | 838 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | KCTAS401 |
| 12/07/2024 | 20:40:35 | 2 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | CLTAS401 |
| 12/08/2024 | 03:30:46 | 479 | mtc | Incoming | ███████ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | | |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

| Date | Time | Duration | | Direction | | Number | Number | Number | IMSI | IMEI | Status | Code | Tower |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/2024 | 19:51:00 | 42 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | DETAS403 |
| 12/15/2024 | 20:37:11 | 799 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | DETAS403 |
| 12/26/2024 | 19:22:54 | 1705 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | DETAS403 |
| 12/28/2024 | 15:35:25 | 764 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 12/28/2024 | 15:53:26 | 61 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 12/31/2024 | 22:13:19 | 121 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 12/31/2024 | 22:16:05 | 109 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | ELTAS404 |
| 01/02/2025 | 22:51:13 | 2 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/25/2025 | 22:11:38 | 7 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/25/2025 | 22:44:48 | 5 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/26/2025 | 03:23:50 | 3 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/27/2025 | 00:34:30 | 743 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 041;11 | NVTAS403 |
| 01/27/2025 | 01:07:14 | 1457 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | NVTAS403 |
| 01/27/2025 | 14:39:27 | | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS403 |
| 01/27/2025 | 17:10:32 | 22 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS401 |
| 02/05/2025 | 03:47:53 | 2 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | NVTAS401 |
| 02/05/2025 | 04:40:15 | | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 011 | NVTAS401 |
| 02/05/2025 | 22:06:45 | | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS401 |
| 02/05/2025 | 22:24:11 | 22 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 02B | NVTAS401 |
| 02/06/2025 | 02:23:34 | 6 | moc | Outgoing | ▆▆▆ | 13608429999 | 13608429999 | 13608429999 | 310260149475513 | 356314950382240 | Completed Successfully | 02B;11 | NVTAS401 |
| 02/06/2025 | 02:23:34 | 6 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS401 |
| 02/12/2025 | 16:30:27 | 17 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | NVTAS401 |
| 02/12/2025 | 23:58:08 | 1867 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 02/19/2025 | 17:18:20 | 905 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 02/20/2025 | 02:14:29 | 3 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 02/20/2025 | 22:23:19 | 440 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |
| 02/25/2025 | 20:54:26 | 1169 | mtc | Incoming | ▆▆▆ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | PBTAS401 |

**Information Provided By:**
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

| Date | Time | Duration | | Direction | Number | A | B | C | IMSI | IMEI | Status | | Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Completed | 011 | PBTAS401 |
| 03/01/2025 | 00:48:07 | 336 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | DETAS403 |
| 03/10/2025 | 23:57:29 | 1219 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | DETAS403 |
| 03/11/2025 | 16:52:37 | 69 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | DETAS403 |
| 03/11/2025 | 23:18:29 | 293 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | DETAS403 |
| 03/11/2025 | 23:49:05 | 975 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | DETAS403 |
| 03/12/2025 | 17:27:05 | 797 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | DETAS403 |
| 03/12/2025 | 20:20:38 | 399 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | DETAS403 |
| 03/13/2025 | 21:19:29 | 252 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | DETAS403 |
| 03/15/2025 | 22:28:57 | 78 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | LVTAS401 |
| 03/21/2025 | 18:11:34 | 790 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | LVTAS401 |
| 03/21/2025 | 18:32:34 | 428 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | LVTAS401 |
| 03/21/2025 | 23:45:16 | 948 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | LVTAS401 |
| 03/22/2025 | 00:18:38 | 675 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Completed | 011 | LVTAS401 |
| 03/22/2025 | 00:38:48 | 40 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Successfully Abnormal Completion | 011 | LVTAS401 |
| 03/22/2025 | 00:42:37 | | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/22/2025 | 01:02:04 | 428 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/22/2025 | 01:13:06 | 1323 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/22/2025 | 16:40:46 | 396 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/23/2025 | 19:09:59 | 103 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/24/2025 | 18:32:19 | 3 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/24/2025 | 19:41:20 | 1091 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/25/2025 | 00:40:00 | 141 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/25/2025 | 00:54:44 | 559 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/25/2025 | 22:41:08 | 26 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Abnormal Completion | 041;11 | LVTAS401 |
| 03/26/2025 | 17:07:22 | | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/26/2025 | 17:09:11 | 27 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | 011 | LVTAS401 |
| 03/26/2025 | 18:06:39 | 165 | mtc | Incoming | ~~redacted~~ | 16154234768 | 16154234768 | 16154234768 | 310260149475513 | 356314950382240 | Completed Successfully | | |

Information Provided By:
T-Mobile US, Inc.
Law Enforcement Relations

4 Sylvan Way, Parsippany, New Jersey 07054
Tel: 866-537-0911; Fax: 973-292-8697

Page: 3 of 12